Further Motion for Rehearing Overruled; Affirmed in Part, Reversed and
Remanded in Part; Memorandum Opinion of August 18, 2005 Withdrawn and Majority
and Dissenting Opinions on Rehearing filed April 27, 2006









 

Further Motion for Rehearing Overruled; Affirmed in
Part, Reversed and Remanded in Part; Memorandum Opinion of August 18, 2005
Withdrawn and Majority and Dissenting Opinions on Rehearing filed April 27,
2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00538-CV

____________

 

THOMAS A. DARDAS,
INDIVIDUALLY AND D/B/A DARDAS & ASSOCIATES AND BILL OGLETREE, P.C. A/K/A
OGLETREE LAW FIRM, Appellants

 

V.

 

FLEMING, HOVENKAMP
& GRAYSON, P.C., FLEMING LAW FIRM, PLLC, AND FLEMING & ASSOCIATES,
L.L.P.,
Appellees

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 02-19156

 



 

  M
A J O R I T Y  O P I N I O N  O N  R E
H E A R I N G

We overrule AAppellees= Further Motion
for Rehearing.@  We
withdraw the opinion issued in this case on August 18, 2005, and we issue the
following majority opinion on rehearing.








This appeal arises out of a dispute
between two groups of attorneys as to entitlement to attorney=s fees in
class-action litigation. 
Appellants/plaintiffs Thomas A. Dardas, individually and d/b/a Dardas
& Associates and Bill Ogletree, P.C. a/k/a Ogletree Law Firm appeal the
trial court=s summary judgment dismissing their claims
against appellees/defendants Fleming, Hovenkamp & Grayson, P.C., Fleming
Law Firm, PLLC, and Fleming & Associates, L.L.P.  We affirm in part and reverse and remand in
part.  

                        I. 
Factual and Procedural Background

Thomas A. Dardas, individually and d/b/a
Dardas & Associates (hereinafter ADardas@) is a Texas
attorney who filed numerous lawsuits against insurance companies on behalf of
policyholders who sought to recover diminished-value damages under their auto
insurance policies.  The term Adiminished-value damages@ refers to a loss
in the market value of a vehicle allegedly caused by market perceptions that a
vehicle involved in an accident, though fully repaired, is worth less than the
same vehicle that has never been damaged. 
See American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 156
(Tex. 2003).  Although it is now clear
that insureds cannot recover diminished-value damages under a Texas Standard
Personal Auto Policy, this was not clear until October 17, 2003, when the Texas
Supreme Court issued its opinion in Schaefer.  See id.  








In 1997, several years before Schaefer,
Dardas decided that he wanted to assemble a legal team to pursue claims for the
recovery of diminished-value damages on a class-action basis, and so he
enlisted the assistance of Michael Sprain, who was then an attorney at Bill
Ogletree, P.C., a/k/a Ogletree Law Firm (hereinafter AOgletree@).  In late 1997, Sprain contacted Debra Hayes,
who was then an attorney at the Fleming Firm.[1]  Shortly thereafter, Dardas and Sprain met
with Hayes.  Before disclosing to Hayes
the idea of pursuing claims for diminished-value damages on a class-action basis,
Dardas required Hayes, on behalf of the Fleming Firm, to sign a contract dated
December 17, 1997 (the ADecember 1997 contract@), between Dardas
and the Fleming Firm.  This handwritten
contract reads, in its entirety, as follows:

This agreement is entered into by
and between Fleming, Hovenkamp & Grayson and Thomas A. Dardas.  The purpose of this agreement is to define
the relationship between Fleming, Hovenkamp & Grayson and Dardas.

Dardas hereby agrees to disclose to
Fleming, Hovenkamp & Grayson a cause of action that Dardas believes is
suitable for a class action.

Fleming [sic] Hovenkamp &
Grayson hereby agrees to evaluate the cause of action for suitability as a
class action.

This agreement is executed with the understanding that if
the Law Firm of Fleming, Hovenkamp & Grayson decide [sic] not to pursue the
cause of action on a class action basis with Dardas, Fleming, Hovenkamp &
Grayson agree [sic] not to pursue dimunition [sic] in value cases for a period
of two (2) years from the date of termination of this agreement.

After the Fleming Firm signed the December
1997 contract, Dardas and Sprain discussed with Hayes the idea of filing
diminished-value claims on a class-action basis.  After evaluating this idea, the Fleming Firm
agreed to pursue diminished-value claims on a class-action basis with Dardas
and Ogletree.  The Fleming Firm, Dardas,
and Ogletree then negotiated a contract among the three of them as to how they
would proceed with these claims, and on January 12, 1998, all three parties
signed a contract (the AJanuary 1998 contract@).  On February 3, 1998, the same three parties
signed a slightly modified contract (the AFebruary 1998
contract@) which states
that it supersedes Aany previous agreements.@  It is undisputed that the February 1998
contract superseded the January 1998 contract. 
The main dispute in this case is the scope of the February 1998
contract.  








Dardas and Ogletree contend that the
February 1998 contract applies to all diminished-value class-action cases in
which the Fleming Firm is involved.  The
Fleming Firm asserts that this contract applies only to diminished-value
class-action cases in which Dardas or Ogletree referred clients or worked on
the case.  The provisions of this
contract are discussed in more detail below; however, the contract states,
among other things, the following: 

The Fleming Firm and Ogletree Awill jointly handle this matter as
co-lead counsel.@ 

!                  
AOgletree will be responsible for
obtaining clients for each case.@ 

!                  
Dardas
Awill continue to consult as the
case develops.@

!                  
Attorney=s fees on the
class action will be divided as follows: 70% to the Fleming Firm and 30% to
Dardas and Ogletree Ato be divided between them as they agree.@

Dardas and Ogletree agreed between themselves that, as
to their 30% share of any such attorney=s fees, 18% would
go to Dardas and 12% would go to Ogletree. 
Furthermore, Bill Ogletree and Michael Sprain agreed that each of them
would receive half of Ogletree=s 12% share.  On March 5, 1999, Fleming, Dardas, and Michael Sprain entered
into a contract (the AMarch 1999 contract@) regarding diminished-value
litigation involving clients referred by Sprain.  

Dardas and Ogletree referred various
clients as proposed class representatives for diminished-value class
actions.  Although the attorneys who
signed the February 1998 contract pursued class-action claims as to some of
these clients, none of these cases resulted in any attorney=s fees.  








In 1999, the Fleming Firm began pursuing
diminished-value class-action claims in states other than Texas without
including Dardas or Ogletree.  The
Fleming Firm reported to Dardas and Ogletree that it believed the February 1998
contract did not cover diminished-value class actions in which the clients were
not referred by Dardas or Ogletree and in which Dardas and Ogletree had not
performed any legal services.  The
Fleming Firm received fees from the settlement of a Georgia diminished-value
class-action case in which Dardas and Ogletree did not refer the client or
provide any legal services.  Dardas and
Ogletree have not received any attorney=s fees relating to
the Georgia case.

Dardas and Ogletree asserted that they were
entitled to work on and receive fees from all diminished-value class actions in
which the Fleming Firm was involved. 
Dardas and Ogletree filed the underlying suit against the Fleming Firm, asserting the following claims: 

                                                                Contract
Claims

The Fleming Firm has breached its oral agreements
pertaining to class-action claims concerning diminished-value damages as well
as the December 1997 contract, the 
January 1998 contract, the February 1998 contract, and March 1999
contract, by taking the following actions: 

!       pursuing diminished-value litigation without involving
Dardas and Ogletree, 

!         failing
to pay Dardas and Ogletree their fee from a settlement of a diminished-value
case in Georgia; and 

!         repudiating
the Fleming Firm=s obligations under these contracts.

                                                                    Tort
Claims

The Fleming Firm is liable to Dardas and Ogletree
based on tort claims of (a) fraud and fraud in the inducement, and (b) breach
of an alleged fiduciary duty and an alleged duty of good faith and fair
dealing.

                                                    Declaratory
Judgment Claims

Under the Texas Declaratory Judgment Act, Dardas and
Ogletree seek the following declaratory relief: 

(1) that Dardas and Ogletree are entitled to the
attorney=s fees specified in the February 1998 contract as to
all diminished-value cases in which the Fleming Firm is involved, 

(2) that all diminished-value cases that the Fleming
Firm pursues are covered by and subject to the terms of the January 1998
contract, February 1998 contract, and March 1999 contract, and 

(3) the four written contracts are unambiguous and
provided the Fleming Firm with the following options: 








(a) the Fleming Firm could have terminated the
December 1997 contract and waited two years before pursuing diminished-value
cases without Dardas and Ogletree or 

(b) the Fleming Firm could have pursued
diminished-value cases with Dardas and Ogletree under the January 1998
contract, February 1998 contract, and the March 1999 contract.  

                              Quantum
Meruit and Promissory Estoppel

The Fleming Firm is liable to
Dardas and Ogletree based on claims of quantum meruit and promissory
estoppel.  

Dardas and Ogletree moved for partial summary judgment,
seeking judgment as a matter of law only as to their claims for declaratory
relief.  The Fleming Firm moved for both
a traditional and no-evidence summary judgment, asserting the following
grounds, among others:

(1)       The January 1998 contract does not apply to any case because
it was superseded by the February 1998 contract.

(2)       Dardas and Ogletree are not entitled to declaratory relief as
to the February 1998 contract because their construction of that contract is
unreasonable and contrary to its plain meaning.

(3)       The March 1999 contract does not support the declaratory
relief sought by Dardas and Ogletree, and furthermore Ogletree has no rights
under this contract because he is not a party to it.

(4)       The third requested declaration should be denied, given that
the December 1997 contract has been consummated and fully performed by the
parties.  Dardas disclosed his idea for
class-action litigation based on diminished-value claims.  The Fleming Firm then evaluated this idea and
chose to pursue class-action litigation with Dardas based on diminished-value
claims.

(5)       To the extent the court determines that the contract between
the parties includes a covenant not to compete that precludes the Fleming Firm
from pursuing diminished-value cases with any other lawyer, then (a) the
covenant-not-to-compete portion of the contract is still unenforceable  because it does not satisfy the requirements
of Texas law; and (b) the covenant not to compete is contrary to Texas ethical
rules and void as against public policy, including the public policy behind
Texas Disciplinary Rule of Professional Conduct 5.06.








(6)       The declaratory relief that Dardas and Ogletree seek would
violate  public policy as expressed in
former Rule 1.04 of
the Texas Disciplinary Rules of Professional Conduct because, if the February 1998 contract had the
meaning ascribed to it by Dardas and Ogletree, it would (a) allow them to
recover attorney=s fees without either acting as a forwarding lawyer or
performing legal services and (b) allow them to recover attorney=s fees without having showed that the clients were
advised of and did not object to their participation.

(7)       Under the unambiguous language of the February 1998 contract,
Dardas and Ogletree are entitled to attorney=s fees
only as to diminished -value cases in which they referred the client or
performed legal services.

(8)       Under the unambiguous language of the December 1997 contract,
that contract has been consummated and fully performed by the parties.  Dardas disclosed his idea for class-action litigation
based on diminished-value claims.  The
Fleming Firm then evaluated this idea and chose to pursue class-action
litigation with Dardas based on diminished-value claims.

(9)       The beach-of-contract claim as to the December 1997 contract
fails as a matter of law because: (a) Ogletree is not a party to it; (b) the
Fleming Firm did not breach it because the Fleming Firm evaluated and pursued
class-action litigation with Dardas based on diminished-value claims; and (c)
as construed by Dardas and Ogletree, the December 1997 contract is an
unenforceable non-compete agreement.

(10)     The breach-of-contract claim as to the February 1998 contract
fails as a matter of law because the Fleming Firm has not recovered any
attorney=s fees in any diminished-value case in which Dardas or
Ogletree referred the client or performed legal services.

(11)     Any claim for breach of an oral contract fails as a matter of
law.

(12)     Any claim for breach of the March 1999 contract fails as a
matter of law because Dardas and Sprain did not refer any cases to the Fleming
Firm after that contract was signed and therefore there were no cases subject
to that contract.  Furthermore, Ogletree
has no right to recover on that contract because he is not a party to it.

(13)     As a matter of law, the Fleming Firm did not owe a fiduciary
duty or duty of good faith and fair dealing to Dardas or Ogletree.








(14)     Dardas and Ogletree may not recover for unjust enrichment
because there is an express contract covering the subject matter.

(15)     Dardas and Ogletree may not recover for promissory estoppel
because there is no evidence of any promise by the Fleming Firm that induced
action or forbearance by Dardas and Ogletree and there is no evidence that any
such promise must be enforced to avoid any injustice. 

(16)     There is no
evidence as to each of the essential elements of fraud and fraud in the
inducement.

The trial court granted the Fleming Firm=s motion for summary judgment without
specifying the grounds and denied the motion for partial summary judgment filed
by Dardas and Ogletree.[2]  On appeal, Dardas and Ogletree assert
that the trial court erred in granting the Fleming Firm=s motion for summary judgment and in
denying their motion for partial summary judgment.  

                                                   II. 
Standards of Review

In reviewing a traditional motion for summary judgment, we
take as true all evidence favorable to the non‑movant, and we make all
reasonable inferences in the non‑movant=s favor.  Dolcefino v. Randolph, 19 S.W.3d 906,
916 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied).  If the movant=s motion and summary‑judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the non‑movant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  Id.








In reviewing a no‑evidence motion for summary judgment,
we ascertain whether the non‑movant produced any evidence of probative
force to raise a genuine issue of fact as to the essential elements attacked in
the no‑evidence motion.  Id.  We take as true all evidence favorable to the
non‑movant, and we make all reasonable inferences therefrom in the non‑movant=s favor.  Id. 
A no‑evidence motion for summary judgment must be granted if the
party opposing the motion does not respond with competent summary‑judgment
evidence that raises a genuine issue of material fact.  Id. at 917.  Because the trial court did not specify the
grounds for its ruling, we will affirm if any of the grounds advanced in the
motion has merit.  See Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).

                                                                III. 
Analysis

A.        Did the trial
court err in ruling that the February 1998 contract unambiguously applies only
to cases in which the clients were referred by Dardas or Ogletree or in which
Dardas and Ogletree performed work?

The main issue in this appeal is the scope
of the February 1998 contract.  Dardas
and Ogletree assert the trial court erred by ruling that this contract
unambiguously applies only to diminished-value class-action cases in which Dardas
or Ogletree referred clients to the Fleming Firm or worked on the case, as
argued by the Fleming Firm.  Dardas and
Ogletree argue that this contract unambiguously applies to all diminished-value
class-action cases in which the Fleming Firm represents a plaintiff, regardless
of whether Dardas or Ogletree referred the client or provided legal
services.  In the alternative, Dardas and
Ogletree argue that this contract is ambiguous and that therefore summary
judgment was improper. 








If a written instrument is so worded that
it can be given a certain or definite legal meaning or interpretation, it is
not ambiguous and it can be construed as a matter of law.  Lenape Res. Corp. v. Tenn. Gas Pipeline
Co., 925 S.W.2d 565, 574 (Tex. 1996). 
If its meaning is uncertain and doubtful or it is reasonably susceptible
to more than one meaning, taking into consideration circumstances present when
the particular writing was executed, then it is ambiguous and its meaning must
be resolved by a finder of fact.  See
id.  In construing a written contract,
our primary concern is to ascertain the true intentions of the parties as
expressed in the written instrument.  See
id.  This court need not embrace
strained rules of construction that would avoid ambiguity at all costs.  See id.  If the contract is ambiguous, then the trial
court erred in granting summary judgment because the interpretation of an
ambiguous contract is a question for the finder of fact.  See Coker v. Coker, 650 S.W.2d 391,
394B95 (Tex.
1983).  

The body of the February 1998 contract
reads, in its entirety, as follows:

Re:     Diminished Value Litigation

Dear Mike and Tom:

This agreement confirms our
arrangement with regard to the handling of the diminished value matter and
supercedes [sic] any previous agreements.

(1)     Fleming, Hovenkamp & Grayson, P.C. (AFH&G@) and The [sic] Ogletree Law Firm (AOgletree@) will jointly handle this matter
as co-lead counsel.

(2)     FH&G will handle the discovery,
depositions and communications with all Plaintiffs and Class
Representatives.  FH&G will be
responsible for establishing a database and communicating with Clients
throughout this litigation.  Ogletree
will assist in the preparation of the Class Representatives and in other legal
support matters.

(3)     Ogletree will be responsible for obtaining
clients for each case.

(4)     Dardas & Associates (ADardas@) was responsible for bringing the
idea to the firms and will continue to consult as the case develops.

(5)     The liability/damages and class action
issues will be handled by FH&G.

(6)     FH&G and Ogletree will agree on a
division of trial responsibility.








(7)     FH&G will finance the expenses
associated with the case such as hiring of the experts, depositions, testing,
and the like.  All case-related expenses
will be taken out of the clients= share at the conclusion of the case or at the time of any
settlement pursuant to the terms of the attorney-client contract or order of
the Court.

(8)     Attorneys= fee [sic] earned on the class
action will be divided on the basis of 70% to FH&G; 30% to Ogletree and
Dardas to be divided between them as they agree.  In the event of appeal or retrial, the same
percentage split between the parties will apply. It is agreed that the division
of fees is fair in relation to the division of work herein.

(9)     The FH&G share as stated above will
include all attorneys with or associated with Fleming, Hovenkamp & Grayson,
P.C. which have heretofore been referred to as FH&G.

(10)    The Ogletree share as stated above will
include all attorneys with or associated with The [sic] Ogletree Law Firm which
have heretofore been referred to as Ogletree.

(11)    The Dardas share as stated above will
include all attorneys with or associated with Dardas & Associates which
have heretofore been referred to as Dardas. 

(12)    If
it is necessary to hire local counsel or appellate counsel, the fee paid will
be paid by all parties proportionately.








As to the issue of scope, the February
1998 contract refers to ADiminished Value Litigation,@ Athe diminished
value matter,@ Athis matter,@ Aclients for each
case,@ Athe case,@ Aexpenses
associated with the case,@ Acase-related
expenses,@ Athe conclusion of
the case,@ and Aattorneys= fee earned on the
class action.@  No
client names or potential defendants are mentioned.  The reference to a single case or class
action would tend to support an interpretation that the parties intended the
February 1998 contract to apply to one class action.  However, even the Fleming Firm agrees that
this contract applies to more than one class-action case.  The terms Amatter@ and Aclients for each
case@ indicate that the
contract may apply to more than one class-action case.  If, as both sides assert, this contract
applies to more than one class-action case, the next question is whether it
applies to cases in which Dardas and Ogletree did not refer the clients.  In support of its interpretation that the
contract does not apply to such cases, the Fleming Firm relies on item (3)
above, which states that Ogletree will be responsible for obtaining clients for
each case.  Although this provision
indicates that Ogletree is supposed to obtain clients for the prospective
diminished-value class actions, it does not state that the February 1998
contract applies only to class actions for which Ogletree obtains the clients.  Item (8) of the contract, which deals with
entitlement to attorney=s fees, does not state that Dardas and
Ogletree are entitled to fees only in cases for which they obtain the clients
or for which they actually provide services; rather, item (8) speaks vaguely of
attorney=s fees Aearned on the
class action.@ 
Taking into consideration the circumstances present when the parties
executed the February 1998 contract, we conclude the meaning of this contract
is uncertain and doubtful.  See Lenape
Res. Corp., 925 S.W.2d at 574 (holding contract provision to be ambiguous);
Coker, 650 S.W.2d at 393B94 (holding that
contract language was unclear and ambiguous); Watkins v. The Krist Law Firm,
No. 14-02-00291-CV, 2003 WL 21786173, at *3B5 (Tex. App.CHouston [14th
Dist.] Aug. 5, 2003, pet. dism=d) (mem op.)
(holding that contract between law firms regarding contingency fees was
ambiguous because its meaning was uncertain and doubtful); A.W. Wright &
Assocs., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P., 993 S.W.2d
466, 470 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied) (holding that language in referral contracts between attorneys
was uncertain and doubtful and therefore ambiguous).  As to the issue at hand, this contract is
ambiguous, and its meaning must be resolved by a finder of fact.  See Lenape Res. Corp., 925
S.W.2d at 574.  Therefore, the
trial court erred in granting summary judgment as to the interpretation of the
February 1998 contract.  See Coker,
650 S.W.2d at 394B95.

B.      Did the trial court err in determining
that, under the interpretation of the February 1998 contract asserted by Dardas
and Ogletree, the contract would violate public policy as expressed in the
version of Texas Disciplinary Rule of Professional Conduct 1.04(f) in effect
when the parties signed that contract?








Although we
conclude that the trial court erred in determining that the February 1998
contract is unambiguous, this error would not be reversible, if, as argued by
the Fleming Firm, the contract is unenforceable as against public policy under
the interpretation asserted by Dardas and Ogletree.  In its motion for summary judgment, the
Fleming Firm claimed the contract, if interpreted in this fashion, would
violate public policy because it allegedly would violate sections (1) and (2)
of the following version of Texas Disciplinary Rule of Professional Conduct
1.04(f), which the Fleming Firm asserted governs this situation:

A division or agreement for
division of a fee between lawyers who are not in the same firm shall not be
made unless:

(1)     the division is:

(i)      in proportion to the professional services
performed by each lawyer;

(ii)      made with a forwarding lawyer;  or

(iii)     made, by written agreement with the client,
with a lawyer who assumes joint responsibility for the representation;

(2)     the client is advised of, and does not
object to, the participation of all the lawyers involved;  and

(3)     the aggregate fee does not violate
paragraph (a).

Tex. Disciplinary R. Prof=l Conduct 1.04(f) (adopted by order of Oct.
17, 1989, effective Jan. 1, 1990, amended by order of Jan. 28, 2005, effective
Mar. 1, 2005, and reprinted in Tex.
Gov=t Code Ann., tit. 2, subtit. G app.  A (Vernon Supp. 2005)) (herein Aformer Rule 1.04@).








The Texas Disciplinary Rules of
Professional Conduct do not define standards for civil liability and do not
give rise to private claims. 
Nonetheless, a court may deem these rules to be an expression of public
policy, so that a contract violating them is unenforceable as against public
policy.  See Bond v. Crill, 906
S.W.2d 103, 106 (Tex. App.CDallas 1995, no
writ); Polland & Cook v. Lehmann, 832 S.W.2d 729, 736 (Tex. App.CHouston [1st
Dist.] 1992, writ denied).  Although
courts may, and often have, used these rules as a measure of public policy,
they are not required to do so. See Tex.
Disciplinary R. Prof=l Conduct Preamble & 15; Wright v.
Sydow, 173 S.W.3d 534, 549 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied) (holding that settlement agreement would be enforced
even if it were executed in violation of a Texas Disciplinary Rule of
Professional Conduct and stating that violation of one of these rules does not
necessarily void a contract); Primrose Operating Co., Inc. v. Jones, 102
S.W.3d 188, 193 (Tex. App.CAmarillo 2003,
pet. denied) (stating that disciplinary rules govern disciplinary proceedings
and only apply to other proceedings if they manifest public policy).  However, the Fleming Firm relied upon former
Rule 1.04 in its motion, and we presume, without deciding, that this version of
the rule expresses public policy regarding the February 1998 contract.  See Bond, 906 S.W.2d at 106 (using
former Rule 1.04 to determine whether a contract was unenforceable as against
public policy).

As the movant for summary judgment, the
Fleming Firm had the burden of proving as a matter of law that the
interpretation urged by Dardas and Ogletree would violate former Rule
1.04(f)(1) and (2).  See id. at
106.  Former Rule 1.04(f)(1)(i) states
that one way to satisfy the rule is for the division of fees to be Ain proportion to
the professional services performed by each lawyer.@  In the fee-splitting provision of the
February 1998 contract, the parties expressly agreed that the division of fees
under that contract is Afair in relation to the division of work
herein.@  The February 1998 contract contemplated that,
as to any case within its scope, Ogletree would act as Aco-lead class
counsel@ and that Dardas
would continue to provide legal services in a consulting capacity.  








Although the Fleming Firm presented an
affidavit showing that, since at least July of 2000, Dardas and Ogletree have
not performed any legal services as to the disputed diminished-value
class-action cases, this evidence is not material to the issue regarding former
Rule 1.04(f)(1) in this case.  If, as
Dardas and Ogletree assert, the February 1998 contract covers all of the
diminished-value class actions in which the Fleming Firm is involved, then that
contract would require the Fleming Firm to allow Ogletree to act as co-lead
class counsel and to consult with Dardas in all such cases.  There is no summary-judgment evidence showing
how much work Dardas and Ogletree would have performed on the disputed
diminished-value cases if the Fleming Firm had included them.  Further, the summary-judgment evidence does
not prove as a matter of law that, if the Fleming Firm had involved Dardas and
Ogletree in all such cases, there would have been a lack of proportion in these
cases between the division of fees under the February 1998 contract and the
professional services performed by each lawyer.  See Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 205 (Tex. 2002) (holding summary-judgment movant did
not prove that fee-sharing agreement would violate former Rule 1.04); Bond,
906 S.W.2d at 106 (holding that summary-judgment movant did not prove that
alleged agreement violated former Rule 1.04(f) because movant did not show
inapplicability of exception to former Rule 1.04(f)).

As to former Rule 1.04(f)(2), the Fleming
Firm argues that this requirement was not satisfied, based on a
summary-judgment affidavit stating that the clients in the disputed
diminished-value cases were not advised of, nor did they consent to,
representation by Dardas and Ogletree. 
First, former Rule 1.04(f)(2) requires that the clients be advised of
the participation of all lawyers involved and that the clients do not object to
such involvement; it does not require that the clients affirmatively
consent.  Second, it is not surprising
that the clients in question were not advised of the participation of Dardas
and Ogletree in their cases, given that Dardas and Ogletree did not participate
in their cases.  The Fleming Firm presented
no summary-judgment evidence that, if, as allegedly required by the February
1998 contract, the Fleming Firm had involved Dardas and Ogletree in the
disputed cases, the clients in question would have objected to their
participation.  See Brewer
& Pritchard, P.C., 73 S.W.3d at 205 (stating that summary judgment was
not proper based on alleged violation of former Rule 1.04(f)(2) because there
was no summary-judgment evidence that clients would have objected to the  participation of the attorney in question).      








Therefore, the trial court erred to the
extent it granted summary judgment on the ground that Dardas and Ogletree=s interpretation
of the February 1998 contract would violate former Rule 1.04(f), and the trial
court reversibly erred by granting summary judgment as to this ambiguous
contract.  Accordingly, we sustain
appellants= first issue to this extent and we sever
and reverse and remand the trial court=s judgment as to
the breach-of-contract claim for the February 1998 contract and as to the first
item of requested declaratory relief, to the extent it is based on the February
1998 contract.

C.      Does
the March 1, 2005 amendment to former Rule 1.04 affect this court=s analysis?

In its AFurther Motion for
Rehearing,@ the Fleming Firm asserts, among other
things, that this court must apply former Rule 1.04 as amended by the Texas
Supreme Court effective March 1, 2005.  See
Tex. Disciplinary R. Prof=l Conduct 1.04(f) (adopted
by order of Jan. 28, 2005, effective Mar. 1, 2005, and reprinted in Tex. Gov=t Code Ann., tit. 2, subtit.  G
app. A).  We disagree for several
reasons.  








This court cannot affirm the trial court=s summary judgment
based on amended Rule 1.04 because the Fleming Firm did not assert this rule in
its motion as a ground for summary judgment. 
See Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex.
1993) (holding that appellate court cannot affirm trial court=s summary judgment
on a ground not expressly stated in the motion for summary judgment).  Though it is not surprising that the Fleming
Firm did not rely upon the text of a rule that had not yet been promulgated,
the Fleming Firm could have argued that, regardless of the text of Rule 1.04,
public policy is violated when  two
lawyers not in the same firm divide a fee if one of them is only a forwarding
lawyer or if the client does not give written consent in advance.  See Wright, 173 S.W.3d at 549 (stating
that while court may take Texas Disciplinary Rules of Professional Conduct as
expression of public policy, they are not required to do so); Whole Foods
Market Southwest, L.P. v. Tijerina, 979 S.W.2d 768, 774 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied) (stating that the existence of law contrary to a
party=s position does
not relieve party of the burden of preserving error in the trial court); Jones
v. Jones, 888 S.W.2d 858, 859B60 (Tex. App.CHouston [1st
Dist.] 1994, order) (holding that even if law changed after summary-judgment
proceedings in the trial court, to present issue on appeal, party still must
have preserved error in the trial court). 

Presuming, without deciding, that the 2005
amendment to former Rule 1.04 applies to the February 1998 contract, we cannot
affirm the trial court=s summary judgment on this basis because
the Fleming Firm=s motion for summary judgment did not
expressly assert that the February 1998 contract violates public policy as
expressed in this amended rule or the language contained therein.  See Baty v. ProTech Ins. Agency,  63 S.W.3d 841, 863 (Tex. App.C Houston [14th
Dist.] 2001, pet. denied) (stating that, even though during pendency of appeal
Texas law had changed regarding essential elements of
tortious-interference-with-prospective-business-relationships claim, appellate
court would not address new law because it was not expressly presented to trial
court as ground for summary judgment). 
In its motion for summary judgment, the Fleming Firm expressly stated
that ARule 1.04(f)
governs this situation and states: [text of former Rule 1.04(f)].@  The Fleming Firm asserted that acceptance of
the interpretation of the February 1998 contract offered by Dardas and Ogletree
would render that contract unenforceable as against public policy because it
would violate former Rule 1.04(f).  The
Fleming Firm failed to assert as a basis for holding that this interpretation
would violate public policy either (1) that one lawyer should not be able to
divide a fee with another lawyer not in the same firm if one of the lawyers is
only a forwarding lawyer, or (2) that one lawyer should not be able to divide a
fee with another lawyer not in the same firm if the client does not give
written consent in advance to the division of the fee.  Therefore, we cannot affirm the trial court=s summary judgment
on this basis.  See Stiles, 867
S.W.2d at 26; Baty,  63 S.W.3d at
863.

Furthermore, we note that the order promulgating the 2005 amendment to
former Rule 1.04 states:

The amendments to Texas
Disciplinary Rule of Professional Conduct 1.04 . . . are effective March 1,
2005.








The existing
version of Rule 1.04 governs only fee-splitting arrangements between lawyers
not in the same firm entered into before the effective date of these
amendments, provided that, by that date, the client has been advised of all the
lawyers that will be participating in the client=s particular
matter. 
(emphasis
added).

The
parties entered into the February 1998 contract more than seven years before
the effective date of the 2005 amendment to former Rule 1.04.  Dardas and Ogletree allege the Fleming Firm
repudiated this contract in 1999 and base their alleged damages, in part, on
lawsuits settled in 2002.  Even if we
could address the 2005 amendment to former Rule 1.04, we still would have to
determine if, by March 1, 2005, each client had been advised of all the lawyers
that will be participating in that client=s particular
matter.  Dardas and Ogletree assert that
the Fleming Firm=s repudiation of the February 1998
contract in 1999 made it impossible for any clients to be advised of all the
lawyers that would be participating in the client=s particular
matter.  The 2003 summary-judgment
evidence in our record does not address whether any disclosure was made to the
clients in question or whether there were any lawyers who will be participating
in any client=s matter. 
The Fleming Firm seeks to remedy this situation by attaching to its
motion for rehearing an affidavit from one of its counsel.  However, we cannot consider this affidavit
because it is not part of our appellate record. 
See Bencon Mgmt. & Gen. Contracting, Inc., 178 S.W.3d 198,
210B11 (Tex. App.C Houston [14th
Dist.] 2005, no pet.).  Because our
appellate record is silent as to factual issues needed to determine whether the
Texas Supreme Court intended the 2005 amendment to apply to the February 1998
contract, we cannot address the amendment in this appeal.








Even if the Texas Supreme Court intended the 2005 amendment
to apply to the February 1998 contract, this does not necessarily mean that
this amendment should be used as an expression of public policy as to the 1998
contract.  Courts are not required to use
the applicable disciplinary rule as evidence of public policy, and a rule that
retroactively applies to a contract executed seven years earlier might be a
case in which courts would  decline to
use the amended rule as an expression of public policy.[3]  See Wright, 173 S.W.3d at 549
(declining to use violation of disciplinary rule as expression of public
policy, the violation of which would void the settlement agreement at issue); Polland
& Cook, 832 S.W.2d at 735B36 (using
predecessor rule to former Rule 1.04 as expression of public policy, even
though former Rule 1.04 was currently in effect, because predecessor rule was
in effect when the agreement in question was executed, without examining the
order promulgating former Rule 1.04 to see if the Texas Supreme Court intended
that rule to apply).  There also may be
constitutional issues regarding the retroactive application of the 2005
amendment to void the February 1998 contract. 
It is appropriate for the trial court to first examine the facts and the
law relating to all of these issues before any appellate court reviews them.








The Fleming Firm, citing Landgraf v. USI Film Prods.,
asserts that a longstanding legal precept requires this court to apply the 2005
amendment  to Rule 1.04, even though that
amendment occurred after the event that gave rise to this suit. 511 U.S. 244,
273, 114 S. Ct. 1483, 1501, 128 L. Ed. 2d 229 (1994).  However, the Landgraf court did not
state that retroactive application was required; rather, it noted a purported
tension between a presumption that statutes are prospective and a recognition
that in many situations, a court should apply the law in effect at the time it
renders its decision.  See Landgraf,
511 U.S. at 273, 114 S. Ct. at 1501.  In Landgraf
five justices held that a federal statute should not be applied
retroactively.  See Landgraf,
511 U.S. at 247, 114 S. Ct. at 1488.  The
statement in Landgraf cited by the Fleming Firm does not affect our
analysis in this case.  In any event,
even as a tool for analyzing whether federal statutes are retroactive, this
statement is controversial.  Three justices
considered this statement to be erroneous even as a rule of federal statutory
interpretation.  See Landgraf, 511
U.S. at 289, 114 S. Ct. at 1523 (Scalia, J., concurring in the judgment).  

The Fleming Firm also cites cases requiring appellate
courts to retroactively apply common law decisions that occur after the trial
court=s ruling.  See, e.g., Blair v. Fletcher, 849
S.W.2d 344, 345 (Tex. 1993).  These cases
do not affect our analysis either.  The
2005 amendment to former Rule 1.04 was not a change in the common law, and the
cases cited by the Fleming Firm do not address the rule that appellate courts
cannot affirm a summary judgment based on a ground not expressly stated in the
motion for summary judgment.  See
Stiles, 867 S.W.2d at 26.

For these reasons, we do not consider in this appeal
whether the 2005 amendment to former Rule 1.04 applies or whether it manifests
public policy as to the February 1998 contract. 


D.      Did
the trial court err in denying declaratory relief and dismissing the
breach-of-contract claim as to the December 1997 contract?

Dardas and Ogletree also assert that the trial court erred
in denying their requested declaratory relief as to the December 1997 contract
and in dismissing their breach-of- contract claim as to this agreement.  Dardas and Ogletree assert that the December
1997 contract prohibits the Fleming Firm from pursuing any diminished-value
class-action claims  without Dardas until
two years after the termination of that contract.  The Fleming Firm asserted in its motion for
summary judgment that, under the unambiguous language of  the December 1997 contract, the agreement has been
consummated and fully performed by the parties. 
We agree with the Fleming Firm=s interpretation.  The December 1997 contract is short and worded so that it
can be given a definite legal meaning.  See
Lenape Res. Corp., 925 S.W.2d at 574. 
Under this contract, Dardas and the Fleming Firm agreed to the following:

!         Dardas
will disclose to the Fleming Firm a claim that Dardas believes is suitable for
class-action litigation.








!         The
Fleming Firm will evaluate the claim disclosed to it by Dardas for suitability
as a class action.

!         If the
Fleming Firm decides not to pursue this claim on a class-action basis with
Dardas, then the Fleming Firm will not pursue cases involving this claim for a
period of two years following the termination of the December 1997 contract.

After signing
this contract, Dardas disclosed his idea for diminished-value class-action
litigation.  The Fleming Firm then
evaluated this idea to see whether it deemed these claims to be suitable for
class-action litigation.  After
evaluating Dardas=s idea, the Fleming Firm chose to pursue the diminished-value
class-action litigation with Dardas.  To
this end, Dardas, Ogletree, and Fleming signed the February 1998 contract
governing how they would proceed. 
Because the Fleming Firm decided to pursue this litigation, the two-year
restriction in the December 1997 contract was never triggered.  Under the unambiguous language of the
December 1997 contract, this contract protected Dardas if the Fleming Firm
decided not to pursue any diminished-value class-action litigation with
Dardas.  This contract, however, does not
speak to how Dardas and the Fleming Firm would go forward if they decided to
pursue such litigation together.  This
topic was left to future negotiation and agreement.  Because the December 1997 contract does not
govern the subject matter of this lawsuit and provides no basis for the relief
sought by Dardas and Ogletree in their petition, the trial court correctly
granted the Fleming Firm=s motion for summary judgment as to their claims based on
this contract.[4]








E.        Did
the trial court err in dismissing the claims based on the January 1998 and
March 1999 contracts and based on alleged oral contracts?

On appeal, Dardas and Ogletree rely
primarily on the December 1997 and February 1998 contracts in support of their
arguments.  In their petition, however,
they also assert claims based on the January 1998 contract, the March 1999
contract, and alleged oral contracts. 
Dardas and Ogletree sought a declaratory judgment that the January 1998
and March 1999 contracts, among others, cover all diminished-value class-action
cases filed by the Fleming Firm. 
Nonetheless, both in their petition and on appeal, Dardas and Ogletree
admit that the February 1998 contract superseded the January 1998
contract.  As to the March 1999 contract,
it is undisputed that the parties to this agreement were Dardas, the Fleming
Firm, and The Sprain Law Firm and that Ogletree was not a party to it.  Dardas and Ogletree state in their appellate
brief that the purpose of the March 1999 contract was to enable Sprain=s new law firm to
refer cases.  The uncontroverted
summary-judgment evidence shows that Dardas and The Sprain Law Firm never
referred any clients to the Fleming Firm under the terms of the March 1999
contract.  








In its motion for summary judgment, the Fleming Firm argued
that (1) the January
1998 contract does not apply because it was superseded by the February 1998
contract, (2) the March 1999 contract does not support the declaratory relief
sought by Dardas and Ogletree, and (3) Ogletree has no rights under the March
1999 contract because he is not a party to it. 
The
Fleming Firm also asserted that any claim based on alleged oral contracts fails
as a matter of law. On appeal, Dardas and Ogletree have not argued that the
trial court erred in dismissing their claims relating to the January 1998
contract, the March 1999 contract, and the alleged oral contracts.  Even if they had so argued, we would find no
merit in these arguments.  The trial
court correctly granted summary judgment in this regard.  Accordingly, we affirm the trial court=s judgment as to
the January 1998 contract, the March 1999 contract, and any alleged oral
contracts.[5]

F.        Did
the trial court err in ruling there is no evidence raising a genuine issue of
material fact as to the fraud and fraud-in-the-inducement claims?

As to their fraud and
fraud-in-the-inducement claims, Dardas and Ogletree argue on appeal that, if
this court determines that the February 1998 contract covers fewer than all of
the diminished-value class-action cases in which the Fleming Firm was involved,
then there is a genuine issue of material fact as to the essential elements of
their fraud and fraud-in-the-inducement claims. 
This court has not determined that the February 1998 contract covers
fewer than all of the diminished-value class-action cases in which the Fleming
Firm was involved; rather, this court has determined that the February 1998
contract is ambiguous as to this issue. 
Therefore, the condition in the conditional argument of Dardas and
Ogletree as to the fraud and fraud-in-the-inducement claims has not occurred,
and so there is no appellate argument as to these claims before this
court.  Accordingly, we affirm the trial
court=s summary judgment
as to the fraud and fraud-in-the-inducement claims.[6]








G.      Did the trial court err in ruling that the
Fleming Firm did not owe a fiduciary duty or duty of good faith and fair
dealing to Dardas or Ogletree?

Appearing to conflate fiduciary
duty and the duty of good faith and fair dealing, Dardas and Ogletree asserted
claims based on the alleged breach of both of these duties.  The trial court granted summary judgment
based on the nonexistence of these duties as a matter of law.  Dardas and Ogletree do not allege that these
duties arose out of a formal relationship; rather, they assert that the duties
arose out of an informal relationship based on an alleged imbalance of power
and their purported trust in the Fleming Firm. 
An informal relationship may give rise to a fiduciary duty when one
person trusts in and relies on another, whether the relationship is a moral,
social, domestic, or purely personal one. 
See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 176
(Tex. 1997).  However, not every
relationship involving a high degree of trust and confidence rises to the
stature of a fiduciary relationship.  See
id. at 176B77. 
Texas courts do not create such a duty lightly.  See id.  To impose such a relationship in a business
transaction, the relationship must exist prior to, and apart from, the
agreement made the basis of the suit.  See
id.  In this case, there is no
evidence that a prior fiduciary relationship had arisen between or among Dardas
and Ogletree and the Fleming Firm. 
Accordingly, as a matter of law, the Fleming Firm did not owe Dardas and
Ogletree a fiduciary duty.  See id.








Although Dardas and Ogletree also argue that the Fleming
Firm owed them a duty of good faith and fair dealing, they cite no case that
supports this argument.  Under Texas law,
there is no general duty of good faith and fair dealing in ordinary, arms‑length
commercial transactions.  Formosa
Plastics Corp. USA  v. Presidio Eng=rs &
Contractors, Inc., 960 S.W.2d 41, 52 (Tex. 1998).  The summary-judgment evidence does not
provide a factual basis for imposing a duty of good faith and fair dealing on
the Fleming Firm in this case; rather, the evidence shows that this case
involves an ordinary, arms-length transaction.

Accordingly, the trial court did not err in granting
summary judgment as to the claims for breach of an alleged fiduciary duty and
breach of an alleged duty of good faith and fair dealing.  See Formosa Plastics Corp. USA,
960 S.W.2d at 52;  Schlumberger Tech.
Corp., 959 S.W.2d at 176. 

H.      Did the trial court err in
dismissing the quantum-meruit and promissory- estoppel claims?

Dardas and Ogletree assert that, if the Fleming Firm=s construction of
the February 1998 contract is correct, then they are entitled to maintain a
quantum-meruit action based on their uncompensated services that the Fleming
Firm accepted, because these services were not covered by the February 1998
contract.  However, the rule is that when
a valid, express contract covers the subject matter of the parties= dispute, there
can be no recovery under a quasi‑contract or unjust enrichment
theory.  Fortune Prod. Co. v. Conoco,
Inc., 52 S.W.3d 671, 684 (Tex. 2000). 
The rationale behind this rule is that parties should be bound by their
express agreements and that recovery under an equitable theory is generally
inconsistent with the express agreement when a valid agreement already addresses
the matter.  See id.  Because the February 1998 contract covers the
subject matter of the dispute between the parties in this case, Dardas and
Ogletree cannot recover, as a matter of law, for quantum meruit.  See id. 








Similarly, as to the promissory-estoppel claim, because an
express contract covers the subject matter of this dispute, there is no need to
avoid injustice by enforcing an alleged promise by the Fleming Firm.  See Subaru of America, Inc. v. David
McDavid Nissan, Inc., 84 S.W.3d 212, 226 (Tex. 2002) (stating that Apromissory-estoppel
doctrine presumes no contract exists@); Doctors
Hosp. 1997, L.P. v. Sambuca Houston, L.P., 154 S.W.3d 634, 636 (Tex. App.CHouston [14th
Dist.] 2004, pet. abated) (stating that, A[f]or many years,
Texas courts have held that promissory estoppel becomes available to a claimant
only in the absence of a valid and enforceable contract@).  Accordingly, the trial court did not err in
dismissing the quantum-meruit and promissory-estoppel claims.  

                                                IV. 
Conclusion

The February 1998 contract is
ambiguous as to whether it covers diminished-value class-action cases in which
Dardas and Ogletree did not refer the clients or perform services.  Therefore, the trial court erred in granting
summary judgment as to the breach-of-contract claim for the February 1998
contract and as to the first item of requested declaratory relief, to the
extent it is based on the February 1998 contract.  As to all other claims, the trial court did
not err in granting summary judgment.[7]  Accordingly, we reverse, sever, and remand
for further proceedings consistent with this opinion the trial court=s judgment as to
the breach-of-contract claim for the February 1998 contract and as to the first
item of requested declaratory relief, to the extent it is based on the February
1998 contract.  We affirm the remainder
of the trial court=s judgment.  We do not address whether the 2005 amendment
to former Rule 1.04 applies or whether it manifests public policy as to the
February 1998 contract. 








Based
on our holdings, we find good cause to apportion the total costs of appeal
equally as between Dardas and Ogletree on the one hand and the Fleming Firm on
the other.  See Tex. R. App. P. 43.4.  Therefore, for good cause and in the interest
of justice, we order Dardas and Ogletree on one side and the Fleming Firm on
the other to each pay one‑half of the aggregate appellate costs incurred
in this case.

 

 

 

/s/      Kem Thompson
Frost                                
Justice

 

 

Judgment rendered, Memorandum Opinion of August 18,
2005 Withdrawn, and Majority and Dissenting Opinions on Rehearing filed April
27, 2006.

 

Panel consists
of Justices Frost, Guzman, and Draughn.[8]
(Draughn, J., dissenting).

 

 











[1]  In this
opinion, we refer to appellees Fleming, Hovenkamp & Grayson, P.C., Fleming
Law Firm, PLLC, and Fleming & Associates, L.L.P. collectively as the AFleming Firm.@  Nonetheless, we take no position on the
existence, if any, of Fleming Law Firm, PLLC, which, according to appellees= counsel, has never existed and never been related to
the other two appellees, to the best of their knowledge.  





[2]  When the trial
court granted summary judgment against Dardas and Ogletree as to all their
claims, their live pleading included claims against George Fleming in his
individual capacity.  The Fleming Firm=s motion for summary judgment does not seek dismissal
of the claims against Fleming in his individual capacity; rather, it states
that Dardas and Ogletree have nonsuited these claims.  Although a docket entry by the trial court indicates
Dardas and Ogletree nonsuited these claims, our record does not contain any
instrument nonsuiting claims, and a docket entry is not sufficient to nonsuit
the claims.  See Iacono v. Lyons,
6 S.W.3d 715, 716B17 (Tex. App.CHouston
[1st Dist.] 1999, order).  Nonetheless,
even if Dardas and Ogletree never nonsuited these claims, the trial court=s judgment would have dismissed them, and Dardas and
Ogletree have not sought reversal of the trial court=s judgment as to these claims.  Indeed, all parties on appeal have acted as
if Fleming, in his individual capacity, is not a party to this appeal.  We need not address any claims against
Fleming in his individual capacity that may have been pending when the trial
court signed its final judgment. 





[3]  The Texas Supreme Court=s decision in Brewer &
Pritchard did not hold that contracts that violate the disciplinary rules
are always unenforceable as against public policy; rather, the Brewer &
Pritchard court stated that a fee-sharing agreement
between lawyers who are not in the same firm violates public policy and is
unenforceable unless the client is advised of and consents to the sharing
arrangement by not objecting to it.  See
Brewer & Pritchard, P.C., 73 S.W.3d at 205B06. 






[4]  In its motion
for summary judgment, the Fleming Firm asserted that, to the extent the court
determines that the contract between the parties includes a covenant not to
compete that precludes the Fleming Firm from pursuing diminished-value cases
with any other lawyer, then (a) the covenant-not-to- compete portion of the
contract is unenforceable  because it
does not satisfy the requirements of Texas law; and (b) the covenant not to
compete is contrary to Texas ethical rules and void as against public policy,
including the public policy behind Texas Disciplinary Rule of Professional
Conduct 5.06.  Neither the trial court
nor this court have determined that the contract between the parties includes
such a covenant not to compete. 
Therefore, this issue is not before us.





[5]  Although not
argued in their opening brief, in their reply brief, Dardas and Ogletree assert
that the Fleming Firm was not entitled to summary judgment as to the March 1999
contract to the extent that the Fleming Firm asserts the March 1999 contract
superseded the February 1998 or January 1998 contracts.  Even if their reply-brief argument were
timely, it would have no merit because the Fleming Firm never sought summary
judgment based on any such argument.  





[6]  In any event,
even if the conditional argument of Dardas and Ogletree were before this court,
we still would conclude that there is no genuine issue of material fact as to
these claims.  In this conditional
argument, Dardas and Ogletree assert that, if the February 1998 contract does
not apply to all of the disputed cases, then the summary-judgment evidence
raises a genuine issue of material fact as to whether the Fleming Firm
fraudulently misrepresented to them that the February 1998 agreement covered
all diminished-value class actions in which the Fleming Firm was to be
involved.  In his deposition, Michael
Sprain stated Debra Hayes made an oral representation that, although the
contracts stated that Ogletree and Dardas (January 1998 contract) or Ogletree
(February 1998 contract) had the responsibility for obtaining clients for each
case, attorney=s fees were Atruly
for the production of the idea.@  Even presuming
that the Fleming Firm made such a representation, it is not reasonable to infer
from this remark that the Fleming Firm was representing that this contract
applied to all diminished-value class actions in which the Fleming Firm was to
be involved.  Furthermore, Sprain and
Dardas both testified that Hayes represented that the reason the January 1998
contract was changed in February 1998, was to address concerns about potential
ethical problems with the January 1998 contract.  Presuming the truth of this testimony, it is
not material to the alleged representation by the Fleming Firm regarding the
scope of the February 1998 contract, because the Fleming Firm=s arguments as to the scope of its contract with
Dardas and Ogletree are not enhanced by the changes that were effected by the
February 1998 contract.  Under the applicable
standard of review, the summary-judgment evidence does not raise a genuine
issue of material fact as to whether the Fleming Firm induced Dardas and
Ogletree to sign the February 1998 contract by making a false representation of
material fact.





[7]  Dardas and
Ogletree ask this court to reverse and render judgment granting their motion
for partial summary judgment.  The Fleming Firm asserts this court
lacks jurisdiction over this motion.  See
CU Lloyd=s of Tex. v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998)
(stating that, before a court of appeals may review an order denying a
cross-motion for summary judgment not covered by an interlocutory appeal
statute, both parties must have sought final judgment in their cross-motions
for summary judgment, unless an exception applies involving declaratory
relief).  Although Dardas and Ogletree
assert that the declaratory-relief exception allows review of their motion for
partial summary judgment, we need not reach this issue because, even assuming
we have jurisdiction over this motion, it would not affect our judgment in this
case.  We cannot render a judgment
granting summary judgment as to an ambiguous contract.





[8]  Senior Justice
Joe L. Draughn sitting by assignment.