Monte BOND, Appellant,

v.

Robert L. CRILL, et al., Appellees.

No. 05–94–01614–CV.

Court of Appeals of Texas,
Dallas.

Aug. 2, 1995.

Dana G. McArthur, Dippel & McArthur, L.L.P., Dallas, for appellant.

Robert L. Crill, Law Offices of Robert L. Crill, Inc., Fort Worth, Gary D. Corley, The Corley Law Firm, Sherman, Michael K. Russell, Loncar & Russell, Dallas, for appellees.

Before LAGARDE, OVARD and WRIGHT, JJ.

## OPINION

LAGARDE, Justice.

Robert L. Crill brought a declaratory judgment action against Monte Bond, Gary Corley, and Michael Russell seeking a declaration of his rights on an oral contract involving the division of attorney fees among lawyers not in the same law firm. Bond counterclaimed against Crill, cross-claimed against Corley and Russell, and brought a third-party action against the Law Offices of Robert L. Crill, Inc. Crill moved for, and the trial court granted, summary judgment.

Bond appeals from the trial court's summary judgment order. He brings eight points of error. In his first six points, Bond generally contends that the trial court erred in denying him attorney fees because the referral agreement between Crill and Bond was not against public policy or violative of the Texas Disciplinary Rules of Professional Conduct. In his seventh and eighth points, Bond contends that the trial court erred in ordering that Bond take nothing by his cross-claims and counterclaims because those claims were not before the trial court upon any motion and there was no evidence or insufficient evidence presented on those claims. We conclude that summary judgment was improper; consequently, we reverse and remand the cause for proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1991, Bond was informed by his legal assistant, Kathryn Adams, of a conversation she had with an acquaintance, Gaye Leach, regarding a personal injury matter involving Leach's sister, Cathey Wright. Leach contacted Bond to discuss her sister's situation. Leach told Bond that she and her mother, Patricia McCain, were responsible for Wright since she was non compos mentis: Wright suffered from brain damage resulting from an accident. After discussing the situation, Bond realized that there was a potential statute of limitations problem and immediately referred Leach to Melody Harlin, an attorney at the Law Offices of Robert L. Crill, Inc. Because "time was of the essence," Bond did not meet to discuss the matter with McCain.

Bond contacted Harlin about the referral arrangement and they agreed that if her firm took the case, Bond would receive a fifty percent referral fee out of the attorney fees recovered and her firm would absorb all expenses. They had made a similar agreement in the past.

Harlin and Crill met with McCain, and she retained their services on behalf of her daughter. Crill did not inform McCain at their meeting of his referral fee arrangement with Bond. After the meeting, Harlin con-

tacted Bond and orally confirmed that Bond would receive fifty percent of the attorney fees recovered and her firm would be responsible for all expenses.

After two lawsuits were filed on Wright's behalf, Crill telephoned Bond to discuss reducing his referral fee to one-third to allow another attorney, Michael Russell, to help with the representation. Bond agreed.

On December 3, 1993, Crill and Russell entered into a written employment agreement with McCain. The agreement provided for a forty percent contingency fee to be paid to Crill and Russell out of any proceeds of the total recovery. On January 25, 1994, Crill and Russell amended the written employment agreement to include attorney Gary Corley, splitting the fee into thirds. Bond was not included in either written agreement. After one of the cases settled, Bond realized that he had not received his referral fee.

Crill filed a declaratory judgment action against Bond to declare that Bond had no interest in the attorney fees from the settlement proceeds and that Crill, Russell, and Corley shared equally in the attorney fees. Bond answered, counterclaimed, crossclaimed and brought a third-party action. Russell and Corley separately filed answers in response to Crill and Bond.

Crill filed a motion for summary judgment on the grounds that Bond had no legal entitlement to the attorney fees and that the oral fee-sharing agreement was void and unenforceable as against public policy because it violated the Texas Disciplinary Rules of Professional Conduct. Bond filed a response asserting that he was entitled to his one-third contingency fee pursuant to his oral contract with Crill. On August 25, 1994, the trial court entered final summary judgment. The trial court stated in its order that Bond had no interest in the attorney fees and ordered that Bond take nothing by his cross-claims and counterclaims.

## TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT

In his third and fourth points of error, Bond contends that Crill did not conclusively prove that the alleged oral fee agreement violated Texas Disciplinary Rule 1.04(f).

## Summary Judgment

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

When the plaintiff moves for summary judgment, he must conclusively establish each essential element of his cause of action as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam); *Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 857 (Tex.App.—Dallas 1994, no writ). Summary judgment may only be granted in favor of the movant whose evidence offered in support of the motion establishes his right to judgment as a matter of law. *Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex.1984). It is only when the moving party establishes his right to summary judg-

ment that the nonmovant must respond by presenting to the trial court any genuine issue of material fact that would preclude summary judgment. *Berly v. D & L Sec. Servs. & Investigations, Inc.*, 876 S.W.2d 179, 190 (Tex.App.—Dallas 1994, writ denied). If the moving party fails to prove entitlement to summary judgment as a matter of law, an appellate court must remand the case for a trial on the merits. *Flowers v. United Ins. Co. of Am.*, 807 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1991, no writ).

### Texas Disciplinary Rule 1.04(f)

■■■ The Texas Disciplinary Rules of Professional Conduct were adopted to govern professional conduct and not to be used as a private cause of action. *See* Tex.Disciplinary R.Prof.Conduct preamble ¶¶ 10, 15 (1989), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1995) (State Bar Rules art. X, § 9). However, the disciplinary rules may be used to determine whether a contract violates public policy. *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 736 (Tex.App.—Houston [1st Dist.] 1992, writ denied). If the contract has not been performed in accordance with the requisites set forth in the disciplinary rules, performance may be excused as against public policy. *Id.*

Referral agreements are governed by rule 1.04(f) of the Texas Disciplinary Rules of Professional Conduct. Rule 1.04(f) provides:

(f) A division or agreement for a division of a fee between lawyers who are not in the same firm shall not be made unless:

(1) the division is:

(i) in proportion to the professional services performed by each lawyer;

(ii) made with a forwarding attorney; or

(iii) made, by written agreement with the client, with a lawyer who assumes joint responsibility for the representation;

(2) *the client is advised of, and does not object to, the participation of all the lawyers involved;* and

(3) the aggregate fee does not violate paragraph (a).

Tex.Disciplinary R.Prof.Conduct 1.04(f) (1989) (emphasis added). Thus, if a lawyer acts as a forwarding attorney, the client need only be advised of and not object to the participation of all the lawyers involved in the fee agreement.[1] *Lehmann*, 832 S.W.2d at 736.

■■■ Comment 10, accompanying rule 1.04(f), explains when a client does not need to be advised of a referral agreement. Comment 10 states in relevant part:

Because the association of additional counsel normally will result in a further disclosure of client confidences and have a financial impact on a client, advance disclosure of the existence of that proposed association and client consent generally are required. Where those consequences will not arise, disclosure is not mandated by this Rule.

Tex.Disciplinary R.Prof.Conduct 1.04 cmt. 10 (1989). Thus, an exception to the mandatory disclosure requirement can arise when there is no disclosure of client confidences to the forwarding attorney and no financial impact on the client. Thus, the party asserting a violation of disciplinary rule 1.04(f) has the burden of negating the exception. *See Matlock v. Kittleman*, 865 S.W.2d 543, 545 (Tex. App.—Corpus Christi 1993, no writ).

### Application of Law to the Facts

■■■ As the movant, Crill had the burden to conclusively establish that McCain was not advised of the referral agreement and that it did not come within the disclosure exception.[2]

---

1. We note that rule 1.04(f) does not indicate who has the burden to advise the client of the referral agreement.

2. Crill orally argued that the comments were not applicable to the rules and, thus, the exception did not apply. Crill cited no authority for this proposition. Further, the preamble explains that the comments "frequently illustrate or explain applications of the rules, in order to provide guidance for interpreting the rules and practicing in compliance with the spirit of the rules." Tex.Disciplinary R.Prof.Conduct preamble ¶ 10 (1989). Nothing in the preamble prevents a lawyer from relying on the comments to show that his conduct was in compliance with the rules.

As summary judgment evidence, Crill attached his own affidavit, McCain's affidavit, and the December 3 and January 25 written employment contracts. Crill's affidavit states that he did not enter into a referral agreement giving Bond one-third of the attorney fees. McCain's affidavit stated that she never spoke to or communicated with Bond, she had no knowledge of a fee agreement between Bond and Crill, she never consented to such an arrangement, and she never entered into any agreement with Bond regarding his sharing of fees. Thus, Crill established that McCain was not advised of Bond's and Crill's referral agreement.

Crill, however, failed to prove that the alleged agreement did not come within the exception to the disclosure requirement. *See Matlock,* 865 S.W.2d at 545. Nothing in the record shows that client confidences were disclosed to Bond or that the fee agreement had a financial impact on McCain (or on Wright). Accordingly, we conclude that Crill's summary judgment evidence failed to show that the circumstances of the alleged oral agreement mandated disclosure and thus, summary judgment was improper. We sustain Bond's third and fourth points of error; consequently, we need not address the other points of error. *See* TEX.R.APP.P. 90(a). We reverse the trial court's summary judgment and remand this cause for proceedings consistent with this opinion.