Thomas A. DARDAS, Individually and d/b/a Dardas & Associates and Bill Ogletree, P.C. a/k/a Ogletree Law Firm, Appellants,

v.

FLEMING, HOVENKAMP & GRAYSON, P.C., Fleming Law Firm, PLLC, and Fleming & Associates, L.L.P., Appellees.

No. 14–03–00538–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 27, 2006.

Scott G. Burdine, William Fred Hagans, Houston, Vincent L. Marable, III, Wharton, for appellants.

Anita F. Kawaja, Mike O'Brien, Sylvia Davidow, Houston, for appellees.

Panel consists of Justices FROST,

GUZMAN, and DRAUGHN.[*]

## MAJORITY OPINION ON REHEARING

KEM THOMPSON FROST, Justice.

We overrule "Appellees' Further Motion for Rehearing." We withdraw the opinion issued in this case on August 18, 2005, and we issue the following majority opinion on rehearing.

This appeal arises out of a dispute between two groups of attorneys as to entitlement to attorney's fees in class-action litigation. Appellants/plaintiffs Thomas A. Dardas, individually and d/b/a Dardas & Associates and Bill Ogletree, P.C. a/k/a Ogletree Law Firm appeal the trial court's summary judgment dismissing their claims against appellees/defendants Fleming, Hovenkamp & Grayson, P.C., Fleming Law Firm, PLLC, and Fleming & Associates, L.L.P. We affirm in part and reverse and remand in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas A. Dardas, individually and d/b/a Dardas & Associates (hereinafter "Dardas") is a Texas attorney who filed numerous lawsuits against insurance companies on behalf of policyholders who sought to recover diminished-value damages under their auto insurance policies. The term "diminished-value damages" refers to a loss in the market value of a vehicle allegedly caused by market perceptions that a vehicle involved in an accident, though fully repaired, is worth less than the same vehicle that has never been damaged. *See American Mfrs. Mut. Ins. Co.*

*v. Schaefer*, 124 S.W.3d 154, 156 (Tex. 2003). Although it is now clear that insureds cannot recover diminished-value damages under a Texas Standard Personal Auto Policy, this was not clear until October 17, 2003, when the Texas Supreme Court issued its opinion in *Schaefer*. *See id.*

In 1997, several years before *Schaefer*, Dardas decided that he wanted to assemble a legal team to pursue claims for the recovery of diminished-value damages on a class-action basis, and so he enlisted the assistance of Michael Sprain, who was then an attorney at Bill Ogletree, P.C., a/k/a Ogletree Law Firm (hereinafter "Ogletree"). In late 1997, Sprain contacted Debra Hayes, who was then an attorney at the Fleming Firm.[1] Shortly thereafter, Dardas and Sprain met with Hayes. Before disclosing to Hayes the idea of pursuing claims for diminished-value damages on a class-action basis, Dardas required Hayes, on behalf of the Fleming Firm, to sign a contract dated December 17, 1997 (the "December 1997 contract"), between Dardas and the Fleming Firm. This handwritten contract reads, in its entirety, as follows:

> This agreement is entered into by and between Fleming, Hovenkamp & Grayson and Thomas A. Dardas. The purpose of this agreement is to define the relationship between Fleming, Hovenkamp & Grayson and Dardas.
>
> Dardas hereby agrees to disclose to Fleming, Hovenkamp & Grayson a cause of action that Dardas believes is suitable for a class action.

---

[*] Senior Justice Joe L. Draughn sitting by assignment.

1. In this opinion, we refer to appellees Fleming, Hovenkamp & Grayson, P.C., Fleming Law Firm, PLLC, and Fleming & Associates, L.L.P. collectively as the "Fleming Firm."

Nonetheless, we take no position on the existence, if any, of Fleming Law Firm, PLLC, which, according to appellees' counsel, has never existed and never been related to the other two appellees, to the best of their knowledge.

Fleming [sic] Hovenkamp & Grayson hereby agrees to evaluate the cause of action for suitability as a class action.

This agreement is executed with the understanding that if the Law Firm of Fleming, Hovenkamp & Grayson decide [sic] not to pursue the cause of action on a class action basis with Dardas, Fleming, Hovenkamp & Grayson agree [sic] not to pursue dimunition [sic] in value cases for a period of two (2) years from the date of termination of this agreement.

After the Fleming Firm signed the December 1997 contract, Dardas and Sprain discussed with Hayes the idea of filing diminished-value claims on a class-action basis. After evaluating this idea, the Fleming Firm agreed to pursue diminished-value claims on a class-action basis with Dardas and Ogletree. The Fleming Firm, Dardas, and Ogletree then negotiated a contract among the three of them as to how they would proceed with these claims, and on January 12, 1998, all three parties signed a contract (the "January 1998 contract"). On February 3, 1998, the same three parties signed a slightly modified contract (the "February 1998 contract") which states that it supersedes "any previous agreements." It is undisputed that the February 1998 contract superseded the January 1998 contract. The main dispute in this case is the scope of the February 1998 contract.

Dardas and Ogletree contend that the February 1998 contract applies to all diminished-value class-action cases in which the Fleming Firm is involved. The Fleming Firm asserts that this contract applies only to diminished-value class-action cases in which Dardas or Ogletree referred clients or worked on the case. The provisions of this contract are discussed in more detail below; however, the contract states, among other things, the following:

The Fleming Firm and Ogletree "will jointly handle this matter as co-lead counsel."

- "Ogletree will be responsible for obtaining clients for each case."
- Dardas "will continue to consult as the case develops."
- Attorney's fees on the class action will be divided as follows: 70% to the Fleming Firm and 30% to Dardas and Ogletree "to be divided between them as they agree."

Dardas and Ogletree agreed between themselves that, as to their 30% share of any such attorney's fees, 18% would go to Dardas and 12% would go to Ogletree. Furthermore, Bill Ogletree and Michael Sprain agreed that each of them would receive half of Ogletree's 12% share. On March 5, 1999, Fleming, Dardas, and Michael Sprain entered into a contract (the "March 1999 contract") regarding diminished-value litigation involving clients referred by Sprain.

Dardas and Ogletree referred various clients as proposed class representatives for diminished-value class actions. Although the attorneys who signed the February 1998 contract pursued class-action claims as to some of these clients, none of these cases resulted in any attorney's fees.

In 1999, the Fleming Firm began pursuing diminished-value class-action claims in states other than Texas without including Dardas or Ogletree. The Fleming Firm reported to Dardas and Ogletree that it believed the February 1998 contract did not cover diminished-value class actions in which the clients were not referred by Dardas or Ogletree and in which Dardas and Ogletree had not performed any legal services. The Fleming Firm received fees from the settlement of a Georgia diminished-value class-action case in which Dardas and Ogletree did not refer the client or

provide any legal services. Dardas and Ogletree have not received any attorney's fees relating to the Georgia case.

Dardas and Ogletree asserted that they were entitled to work on and receive fees from all diminished-value class actions in which the Fleming Firm was involved. Dardas and Ogletree filed the underlying suit against the Fleming Firm, asserting the following claims:

### Contract Claims

The Fleming Firm has breached its oral agreements pertaining to class-action claims concerning diminished-value damages as well as the December 1997 contract, the January 1998 contract, the February 1998 contract, and March 1999 contract, by taking the following actions:

- pursuing diminished-value litigation without involving Dardas and Ogletree,
- failing to pay Dardas and Ogletree their fee from a settlement of a diminished-value case in Georgia; and
- repudiating the Fleming Firm's obligations under these contracts.

### Tort Claims

The Fleming Firm is liable to Dardas and Ogletree based on tort claims of (a) fraud and fraud in the inducement, and (b) breach of an alleged fiduciary duty and an alleged duty of good faith and fair dealing.

### Declaratory Judgment Claims

Under the Texas Declaratory Judgment Act, Dardas and Ogletree seek the following declaratory relief:

(1) that Dardas and Ogletree are entitled to the attorney's fees specified in the February 1998 contract as to all diminished-value cases in which the Fleming Firm is involved,

(2) that all diminished-value cases that the Fleming Firm pursues are covered by and subject to the terms of the January 1998 contract, February 1998 contract, and March 1999 contract, and

(3) the four written contracts are unambiguous and provided the Fleming Firm with the following options:

(a) the Fleming Firm could have terminated the December 1997 contract and waited two years before pursuing diminished-value cases without Dardas and Ogletree or

(b) the Fleming Firm could have pursued diminished-value cases with Dardas and Ogletree under the January 1998 contract, February 1998 contract, and the March 1999 contract.

### Quantum Meruit and Promissory Estoppel

The Fleming Firm is liable to Dardas and Ogletree based on claims of quantum meruit and promissory estoppel.

Dardas and Ogletree moved for partial summary judgment, seeking judgment as a matter of law only as to their claims for declaratory relief. The Fleming Firm moved for both a traditional and no-evidence summary judgment, asserting the following grounds, among others:

(1) The January 1998 contract does not apply to any case because it was superseded by the February 1998 contract.

(2) Dardas and Ogletree are not entitled to declaratory relief as to the February 1998 contract because their construction of that contract is unreasonable and contrary to its plain meaning.

(3) The March 1999 contract does not support the declaratory relief sought by Dardas and Ogletree, and furthermore Ogletree has no rights under

this contract because he is not a party to it.

(4) The third requested declaration should be denied, given that the December 1997 contract has been consummated and fully performed by the parties. Dardas disclosed his idea for class-action litigation based on diminished-value claims. The Fleming Firm then evaluated this idea and chose to pursue class-action litigation with Dardas based on diminished-value claims.

(5) To the extent the court determines that the contract between the parties includes a covenant not to compete that precludes the Fleming Firm from pursuing diminished-value cases with any other lawyer, then (a) the covenant-not-to-compete portion of the contract is still unenforceable because it does not satisfy the requirements of Texas law; and (b) the covenant not to compete is contrary to Texas ethical rules and void as against public policy, including the public policy behind Texas Disciplinary Rule of Professional Conduct 5.06.

(6) The declaratory relief that Dardas and Ogletree seek would violate public policy as expressed in former Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct because, if the February 1998 contract had the meaning ascribed to it by Dardas and Ogletree, it would (a) allow them to recover attorney's fees without either acting as a forwarding lawyer or performing legal services and (b) allow them to recover attorney's fees without having showed that the clients were advised of and did not object to their participation.

(7) Under the unambiguous language of the February 1998 contract, Dardas and Ogletree are entitled to attorney's fees only as to diminished-value cases in which they referred the client or performed legal services.

(8) Under the unambiguous language of the December 1997 contract, that contract has been consummated and fully performed by the parties. Dardas disclosed his idea for class-action litigation based on diminished-value claims. The Fleming Firm then evaluated this idea and chose to pursue class-action litigation with Dardas based on diminished-value claims.

(9) The breach-of-contract claim as to the December 1997 contract fails as a matter of law because: (a) Ogletree is not a party to it; (b) the Fleming Firm did not breach it because the Fleming Firm evaluated and pursued class-action litigation with Dardas based on diminished-value claims; and (c) as construed by Dardas and Ogletree, the December 1997 contract is an unenforceable non-compete agreement.

(10) The breach-of-contract claim as to the February 1998 contract fails as a matter of law because the Fleming Firm has not recovered any attorney's fees in any diminished-value case in which Dardas or Ogletree referred the client or performed legal services.

(11) Any claim for breach of an oral contract fails as a matter of law.

(12) Any claim for breach of the March 1999 contract fails as a matter of law because Dardas and Sprain did not refer any cases to the Fleming Firm after that contract was signed and therefore there were no cases subject to that contract. Furthermore, Ogletree has no right to recover on that contract because he is not a party to it.

(13) As a matter of law, the Fleming Firm did not owe a fiduciary duty or duty of good faith and fair dealing to Dardas or Ogletree.

(14) Dardas and Ogletree may not recover for unjust enrichment because there is an express contract covering the subject matter.

(15) Dardas and Ogletree may not recover for promissory estoppel because there is no evidence of any promise by the Fleming Firm that induced action or forbearance by Dardas and Ogletree and there is no evidence that any such promise must be enforced to avoid any injustice.

(16) There is no evidence as to each of the essential elements of fraud and fraud in the inducement.

The trial court granted the Fleming Firm's motion for summary judgment without specifying the grounds and denied the motion for partial summary judgment filed by Dardas and Ogletree.[2] On appeal, Dardas and Ogletree assert that the trial court erred in granting the Fleming Firm's motion for summary judgment and in denying their motion for partial summary judgment.

## II. STANDARDS OF REVIEW

In reviewing a traditional motion for summary judgment, we take as true all evidence favorable to the non-movant, and we make all reasonable inferences in the non-movant's favor. *Dolcefino v. Randolph,* 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

In reviewing a no-evidence motion for summary judgment, we ascertain whether the non-movant produced any evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Id.* We take as true all evidence favorable to the non-movant, and we make all reasonable inferences therefrom in the non-movant's favor. *Id.* A no-evidence motion for summary judgment must be granted if the party opposing the motion does not respond with competent summary-judgment evidence that raises a genuine issue of material fact. *Id.* at 917. Because the trial court did not specify the grounds for its ruling, we will affirm if any of the grounds advanced in the motion has merit. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## III. ANALYSIS

**A. Did the trial court err in ruling that the February 1998 contract unambiguously applies only to cases in which the clients were referred by Dardas or Ogletree or in which Dardas and Ogletree performed work?**

The main issue in this appeal is the scope of the February 1998 contract. Dar-

---

**2.** When the trial court granted summary judgment against Dardas and Ogletree as to all their claims, their live pleading included claims against George Fleming in his individual capacity. The Fleming Firm's motion for summary judgment does not seek dismissal of the claims against Fleming in his individual capacity; rather, it states that Dardas and Ogletree have nonsuited these claims. Although a docket entry by the trial court indicates Dardas and Ogletree nonsuited these claims, our record does not contain any instrument nonsuiting claims, and a docket entry is not sufficient to nonsuit the claims. *See*

*Iacono v. Lyons,* 6 S.W.3d 715, 716–17 (Tex. App.-Houston [1st Dist.] 1999, order). Nonetheless, even if Dardas and Ogletree never nonsuited these claims, the trial court's judgment would have dismissed them, and Dardas and Ogletree have not sought reversal of the trial court's judgment as to these claims. Indeed, all parties on appeal have acted as if Fleming, in his individual capacity, is not a party to this appeal. We need not address any claims against Fleming in his individual capacity that may have been pending when the trial court signed its final judgment.

das and Ogletree assert the trial court erred by ruling that this contract unambiguously applies only to diminished-value class-action cases in which Dardas or Ogletree referred clients to the Fleming Firm or worked on the case, as argued by the Fleming Firm. Dardas and Ogletree argue that this contract unambiguously applies to all diminished-value class-action cases in which the Fleming Firm represents a plaintiff, regardless of whether Dardas or Ogletree referred the client or provided legal services. In the alternative, Dardas and Ogletree argue that this contract is ambiguous and that therefore summary judgment was improper.

 If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and it can be construed as a matter of law. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996). If its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, taking into consideration circumstances present when the particular writing was executed, then it is ambiguous and its meaning must be resolved by a finder of fact. *See id.* In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the written instrument. *See id.* This court need not embrace strained rules of construction that would avoid ambiguity at all costs. *See id.* If the contract is ambiguous, then the trial court erred in granting summary judgment because the interpretation of an ambiguous contract is a question for the finder of fact. *See Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex.1983).

The body of the February 1998 contract reads, in its entirety, as follows:

Re: Diminished Value Litigation

Dear Mike and Tom:

This agreement confirms our arrangement with regard to the handling of the diminished value matter and supercedes [sic] any previous agreements.

(1) Fleming, Hovenkamp & Grayson, P.C. ("FH & G") and The [sic] Ogletree Law Firm ("Ogletree") will jointly handle this matter as co-lead counsel.

(2) FH & G will handle the discovery, depositions and communications with all Plaintiffs and Class Representatives. FH & G will be responsible for establishing a database and communicating with Clients throughout this litigation. Ogletree will assist in the preparation of the Class Representatives and in other legal support matters.

(3) Ogletree will be responsible for obtaining clients for each case.

(4) Dardas & Associates ("Dardas") was responsible for bringing the idea to the firms and will continue to consult as the case develops.

(5) The liability/damages and class action issues will be handled by FH & G.

(6) FH & G and Ogletree will agree on a division of trial responsibility.

(7) FH & G will finance the expenses associated with the case such as hiring of the experts, depositions, testing, and the like. All case-related expenses will be taken out of the clients' share at the conclusion of the case or at the time of any settlement pursuant to the terms of the attorney-client contract or order of the Court.

(8) Attorneys' fee [sic] earned on the class action will be divided on the basis of 70% to FH & G; 30% to Ogletree and Dardas to be divided between them as they agree. In the event of appeal or retrial, the

same percentage split between the parties will apply. It is agreed that the division of fees is fair in relation to the division of work herein.

(9) The FH & G share as stated above will include all attorneys with or associated with Fleming, Hovenkamp & Grayson, P.C. which have heretofore been referred to as FH & G.

(10) The Ogletree share as stated above will include all attorneys with or associated with The [sic] Ogletree Law Firm which have heretofore been referred to as Ogletree.

(11) The Dardas share as stated above will include all attorneys with or associated with Dardas & Associates which have heretofore been referred to as Dardas.

(12) If it is necessary to hire local counsel or appellate counsel, the fee paid will be paid by all parties proportionately.

As to the issue of scope, the February 1998 contract refers to "Diminished Value Litigation," "the diminished value matter," "this matter," "clients for each case," "the case," "expenses associated with the case," "case-related expenses," "the conclusion of the case," and "attorneys' fee earned on the class action." No client names or potential defendants are mentioned. The reference to a single case or class action would tend to support an interpretation that the parties intended the February 1998 contract to apply to one class action. However, even the Fleming Firm agrees that this contract applies to more than one class-action case. The terms "matter" and "clients for each case" indicate that the contract may apply to more than one class-action case. If, as both sides assert, this contract applies to more than one class-action case, the next question is whether it applies to cases in which Dardas and Ogle-

tree did not refer the clients. In support of its interpretation that the contract does not apply to such cases, the Fleming Firm relies on item (3) above, which states that Ogletree will be responsible for obtaining clients for each case. Although this provision indicates that Ogletree is supposed to obtain clients for the prospective diminished-value class actions, it does not state that the February 1998 contract applies only to class actions for which Ogletree obtains the clients. Item (8) of the contract, which deals with entitlement to attorney's fees, does not state that Dardas and Ogletree are entitled to fees only in cases for which they obtain the clients or for which they actually provide services; rather, item (8) speaks vaguely of attorney's fees "earned on the class action." Taking into consideration the circumstances present when the parties executed the February 1998 contract, we conclude the meaning of this contract is uncertain and doubtful. See Lenape Res. Corp., 925 S.W.2d at 574 (holding contract provision to be ambiguous); Coker, 650 S.W.2d at 393–94 (holding that contract language was unclear and ambiguous); Watkins v. The Krist Law Firm, No. 14–02–00291–CV, 2003 WL 21786173, at *3–5 (Tex.App.-Houston [14th Dist.] Aug. 5, 2003, pet. dism'd) (mem op.) (holding that contract between law firms regarding contingency fees was ambiguous because its meaning was uncertain and doubtful); A.W. Wright & Assocs., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P., 993 S.W.2d 466, 470 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that language in referral contracts between attorneys was uncertain and doubtful and therefore ambiguous). As to the issue at hand, this contract is ambiguous, and its meaning must be resolved by a finder of fact. See Lenape Res. Corp., 925 S.W.2d at 574. Therefore, the trial court erred in granting summary judgment as to the interpretation of the

February 1998 contract. *See Coker*, 650 S.W.2d at 394–95.

**B. Did the trial court err in determining that, under the interpretation of the February 1998 contract asserted by Dardas and Ogletree, the contract would violate public policy as expressed in the version of Texas Disciplinary Rule of Professional Conduct 1.04(f) in effect when the parties signed that contract?**

■ Although we conclude that the trial court erred in determining that the February 1998 contract is unambiguous, this error would not be reversible, if, as argued by the Fleming Firm, the contract is unenforceable as against public policy under the interpretation asserted by Dardas and Ogletree. In its motion for summary judgment, the Fleming Firm claimed the contract, if interpreted in this fashion, would violate public policy because it allegedly would violate sections (1) and (2) of the following version of Texas Disciplinary Rule of Professional Conduct 1.04(f), which the Fleming Firm asserted governs this situation:

A division or agreement for division of a fee between lawyers who are not in the same firm shall not be made unless:

(1) the division is:

(i) in proportion to the professional services performed by each lawyer;

(ii) made with a forwarding lawyer; or

(iii) made, by written agreement with the client, with a lawyer who assumes joint responsibility for the representation;

(2) the client is advised of, and does not object to, the participation of all the lawyers involved; and

(3) the aggregate fee does not violate paragraph (a).

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(f) (adopted by order of Oct. 17, 1989, effective Jan. 1, 1990, amended by order of Jan. 28, 2005, effective Mar. 1, 2005, and *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.2005)) (herein "former Rule 1.04").

■ The Texas Disciplinary Rules of Professional Conduct do not define standards for civil liability and do not give rise to private claims. Nonetheless, a court may deem these rules to be an expression of public policy, so that a contract violating them is unenforceable as against public policy. *See Bond v. Crill*, 906 S.W.2d 103, 106 (Tex.App.-Dallas 1995, no writ); *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 736 (Tex.App.-Houston [1st Dist.] 1992, writ denied). Although courts may, and often have, used these rules as a measure of public policy, they are not required to do so. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT Preamble ¶ 15; *Wright v. Sydow*, 173 S.W.3d 534, 549 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (holding that settlement agreement would be enforced even if it were executed in violation of a Texas Disciplinary Rule of Professional Conduct and stating that violation of one of these rules does not necessarily void a contract); *Primrose Operating Co., Inc. v. Jones*, 102 S.W.3d 188, 193 (Tex.App.-Amarillo 2003, pet. denied) (stating that disciplinary rules govern disciplinary proceedings and only apply to other proceedings if they manifest public policy). However, the Fleming Firm relied upon former Rule 1.04 in its motion, and we presume, without deciding, that this version of the rule expresses public policy regarding the February 1998 contract. *See Bond*, 906 S.W.2d at 106 (using former Rule 1.04 to determine whether a contract was unenforceable as against public policy).

As the movant for summary judgment, the Fleming Firm had the burden of prov-

ing as a matter of law that the interpretation urged by Dardas and Ogletree would violate former Rule 1.04(f)(1) and (2). *See id.* at 106. Former Rule 1.04(f)(1)(i) states that one way to satisfy the rule is for the division of fees to be "in proportion to the professional services performed by each lawyer." In the fee-splitting provision of the February 1998 contract, the parties expressly agreed that the division of fees under that contract is "fair in relation to the division of work herein." The February 1998 contract contemplated that, as to any case within its scope, Ogletree would act as "co-lead class counsel" and that Dardas would continue to provide legal services in a consulting capacity.

Although the Fleming Firm presented an affidavit showing that, since at least July of 2000, Dardas and Ogletree have not performed any legal services as to the disputed diminished-value class-action cases, this evidence is not material to the issue regarding former Rule 1.04(f)(1) in this case. If, as Dardas and Ogletree assert, the February 1998 contract covers all of the diminished-value class actions in which the Fleming Firm is involved, then that contract would require the Fleming Firm to allow Ogletree to act as co-lead class counsel and to consult with Dardas in all such cases. There is no summary-judgment evidence showing how much work Dardas and Ogletree would have performed on the disputed diminished-value cases if the Fleming Firm had included them. Further, the summary-judgment evidence does not prove as a matter of law that, if the Fleming Firm had involved Dardas and Ogletree in all such cases, there would have been a lack of proportion in these cases between the division of fees under the February 1998 contract and the professional services performed by each lawyer. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 205 (Tex.2002) (holding summary-judgment movant did

not prove that fee-sharing agreement would violate former Rule 1.04); *Bond,* 906 S.W.2d at 106 (holding that summary-judgment movant did not prove that alleged agreement violated former Rule 1.04(f) because movant did not show inapplicability of exception to former Rule 1.04(f)).

As to former Rule 1.04(f)(2), the Fleming Firm argues that this requirement was not satisfied, based on a summary-judgment affidavit stating that the clients in the disputed diminished-value cases were not advised of, nor did they consent to, representation by Dardas and Ogletree. First, former Rule 1.04(f)(2) requires that the clients be advised of the participation of all lawyers involved and that the clients do not object to such involvement; it does not require that the clients affirmatively consent. Second, it is not surprising that the clients in question were not advised of the participation of Dardas and Ogletree in their cases, given that Dardas and Ogletree did not participate in their cases. The Fleming Firm presented no summary-judgment evidence that, if, as allegedly required by the February 1998 contract, the Fleming Firm had involved Dardas and Ogletree in the disputed cases, the clients in question would have objected to their participation. *See Brewer & Pritchard, P.C.,* 73 S.W.3d at 205 (stating that summary judgment was not proper based on alleged violation of former Rule 1.04(f)(2) because there was no summary-judgment evidence that clients would have objected to the participation of the attorney in question).

Therefore, the trial court erred to the extent it granted summary judgment on the ground that Dardas and Ogletree's interpretation of the February 1998 contract would violate former Rule 1.04(f), and the trial court reversibly erred by granting summary judgment as to this ambiguous contract. Accordingly, we sustain appel-

lants' first issue to this extent and we sever and reverse and remand the trial court's judgment as to the breach-of-contract claim for the February 1998 contract and as to the first item of requested declaratory relief, to the extent it is based on the February 1998 contract.

## C. Does the March 1, 2005 amendment to former Rule 1.04 affect this court's analysis?

█ In its "Further Motion for Rehearing," the Fleming Firm asserts, among other things, that this court must apply former Rule 1.04 as amended by the Texas Supreme Court effective March 1, 2005. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(f) (adopted by order of Jan. 28, 2005, effective Mar. 1, 2005, and *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A). We disagree for several reasons.

This court cannot affirm the trial court's summary judgment based on amended Rule 1.04 because the Fleming Firm did not assert this rule in its motion as a ground for summary judgment. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993) (holding that appellate court cannot affirm trial court's summary judgment on a ground not expressly stated in the motion for summary judgment). Though it is not surprising that the Fleming Firm did not rely upon the text of a rule that had not yet been promulgated, the Fleming Firm could have argued that, regardless of the text of Rule 1.04, public policy is violated when two lawyers not in the same firm divide a fee if one of them is only a forwarding lawyer or if the client does not give written consent in advance. *See Wright*, 173 S.W.3d at 549 (stating that while court may take Texas Disciplinary Rules of Professional Conduct as expression of public policy, they are not required to do so); *Whole Foods Market Southwest, L.P. v. Tijerina*, 979 S.W.2d 768, 774 (Tex.

App.-Houston [14th Dist.] 1998, pet. denied) (stating that the existence of law contrary to a party's position does not relieve party of the burden of preserving error in the trial court); *Jones v. Jones*, 888 S.W.2d 858, 859–60 (Tex.App.-Houston [1st Dist.] 1994, order) (holding that even if law changed after summary-judgment proceedings in the trial court, to present issue on appeal, party still must have preserved error in the trial court).

Presuming, without deciding, that the 2005 amendment to former Rule 1.04 applies to the February 1998 contract, we cannot affirm the trial court's summary judgment on this basis because the Fleming Firm's motion for summary judgment did not expressly assert that the February 1998 contract violates public policy as expressed in this amended rule or the language contained therein. *See Baty v. Pro-Tech Ins. Agency*, 63 S.W.3d 841, 863 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) (stating that, even though during pendency of appeal Texas law had changed regarding essential elements of tortious-interference-with-prospective-business-relationships claim, appellate court would not address new law because it was not expressly presented to trial court as ground for summary judgment). In its motion for summary judgment, the Fleming Firm expressly stated that "Rule 1.04(f) governs this situation and states: [text of former Rule 1.04(f)]." The Fleming Firm asserted that acceptance of the interpretation of the February 1998 contract offered by Dardas and Ogletree would render that contract unenforceable as against public policy because it would violate former Rule 1.04(f). The Fleming Firm failed to assert as a basis for holding that this interpretation would violate public policy either (1) that one lawyer should not be able to divide a fee with another lawyer not in the same firm if one of the lawyers is only a forwarding lawyer, or (2) that one lawyer

should not be able to divide a fee with another lawyer not in the same firm if the client does not give written consent in advance to the division of the fee. Therefore, we cannot affirm the trial court's summary judgment on this basis. *See Stiles*, 867 S.W.2d at 26; *Baty*, 63 S.W.3d at 863.

■ Furthermore, we note that the order promulgating the 2005 amendment to former Rule 1.04 states:

> The amendments to Texas Disciplinary Rule of Professional Conduct 1.04 ... are effective March 1, 2005.

> The existing version of Rule 1.04 governs only fee-splitting arrangements between lawyers not in the same firm entered into before the effective date of these amendments, provided that, by that date, the client has been advised of all the lawyers that *will be participating* in the client's particular matter. (emphasis added).

The parties entered into the February 1998 contract more than seven years before the effective date of the 2005 amendment to former Rule 1.04. Dardas and Ogletree allege the Fleming Firm repudiated this contract in 1999 and base their alleged damages, in part, on lawsuits settled in 2002. Even if we could address the 2005 amendment to former Rule 1.04, we still would have to determine if, by March 1, 2005, each client had been advised of all the lawyers that *will be participating* in that client's particular matter. Dardas and Ogletree assert that the Fleming Firm's repudiation of the February 1998 contract in 1999 made it impossible for any clients to be advised of all the lawyers that would be participating in the client's par-

ticular matter. The 2003 summary-judgment evidence in our record does not address whether any disclosure was made to the clients in question or whether there were any lawyers who will be participating in any client's matter. The Fleming Firm seeks to remedy this situation by attaching to its motion for rehearing an affidavit from one of its counsel. However, we cannot consider this affidavit because it is not part of our appellate record. *See Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210–11 (Tex. App.-Houston [14th Dist.] 2005, no pet.). Because our appellate record is silent as to factual issues needed to determine whether the Texas Supreme Court intended the 2005 amendment to apply to the February 1998 contract, we cannot address the amendment in this appeal.

Even if the Texas Supreme Court intended the 2005 amendment to apply to the February 1998 contract, this does not necessarily mean that this amendment should be used as an expression of public policy as to the 1998 contract. Courts are not required to use the applicable disciplinary rule as evidence of public policy, and a rule that retroactively applies to a contract executed seven years earlier might be a case in which courts would decline to use the amended rule as an expression of public policy.[3] *See Wright*, 173 S.W.3d at 549 (declining to use violation of disciplinary rule as expression of public policy, the violation of which would void the settlement agreement at issue); *Polland & Cook*, 832 S.W.2d at 735–36 (using predecessor rule to former Rule 1.04 as expression of public policy, even though former Rule 1.04 was currently in effect, because predecessor rule was in effect when the

---

3. The Texas Supreme Court's decision in *Brewer & Pritchard* did not hold that contracts that violate the disciplinary rules are always unenforceable as against public policy; rather, the *Brewer & Pritchard* court stated that a fee-sharing agreement between lawyers who are not in the same firm violates public policy and is unenforceable unless the client is advised of and consents to the sharing arrangement by not objecting to it. *See Brewer & Pritchard, P.C.*, 73 S.W.3d at 205–06.

agreement in question was executed, without examining the order promulgating former Rule 1.04 to see if the Texas Supreme Court intended that rule to apply). There also may be constitutional issues regarding the retroactive application of the 2005 amendment to void the February 1998 contract. It is appropriate for the trial court to first examine the facts and the law relating to all of these issues before any appellate court reviews them.

The Fleming Firm, citing *Landgraf v. USI Film Prods.*, asserts that a longstanding legal precept requires this court to apply the 2005 amendment to Rule 1.04, even though that amendment occurred after the event that gave rise to this suit. 511 U.S. 244, 273, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). However, the *Landgraf* court did not state that retroactive application was required; rather, it noted a purported tension between a presumption that statutes are prospective and a recognition that in many situations, a court should apply the law in effect at the time it renders its decision. *See Landgraf*, 511 U.S. at 273, 114 S.Ct. at 1501. In *Landgraf* five justices held that a federal statute should not be applied retroactively. *See Landgraf*, 511 U.S. at 247, 114 S.Ct. at 1488. The statement in *Landgraf* cited by the Fleming Firm does not affect our analysis in this case. In any event, even as a tool for analyzing whether federal statutes are retroactive, this statement is controversial. Three justices considered this statement to be erroneous even as a rule of federal statutory interpretation. *See Landgraf*, 511 U.S. at 289, 114 S.Ct. at 1523 (Scalia, J., concurring in the judgment).

The Fleming Firm also cites cases requiring appellate courts to retroactively apply common law decisions that occur after the trial court's ruling. *See, e.g., Blair v. Fletcher*, 849 S.W.2d 344, 345 (Tex.1993). These cases do not affect our analysis either. The 2005 amendment to former Rule 1.04 was not a change in the common law, and the cases cited by the Fleming Firm do not address the rule that appellate courts cannot affirm a summary judgment based on a ground not expressly stated in the motion for summary judgment. *See Stiles*, 867 S.W.2d at 26.

For these reasons, we do not consider in this appeal whether the 2005 amendment to former Rule 1.04 applies or whether it manifests public policy as to the February 1998 contract.

**D. Did the trial court err in denying declaratory relief and dismissing the breach-of-contract claim as to the December 1997 contract?**

■ Dardas and Ogletree also assert that the trial court erred in denying their requested declaratory relief as to the December 1997 contract and in dismissing their breach-of-contract claim as to this agreement. Dardas and Ogletree assert that the December 1997 contract prohibits the Fleming Firm from pursuing any diminished-value class-action claims without Dardas until two years after the termination of that contract. The Fleming Firm asserted in its motion for summary judgment that, under the unambiguous language of the December 1997 contract, the agreement has been consummated and fully performed by the parties. We agree with the Fleming Firm's interpretation. The December 1997 contract is short and worded so that it can be given a definite legal meaning. *See Lenape Res. Corp.*, 925 S.W.2d at 574. Under this contract, Dardas and the Fleming Firm agreed to the following:

- Dardas will disclose to the Fleming Firm a claim that Dardas believes is suitable for class-action litigation.
- The Fleming Firm will evaluate the claim disclosed to it by Dardas for suitability as a class action.

- If the Fleming Firm decides not to pursue this claim on a class-action basis with Dardas, then the Fleming Firm will not pursue cases involving this claim for a period of two years following the termination of the December 1997 contract.

After signing this contract, Dardas disclosed his idea for diminished-value class-action litigation. The Fleming Firm then evaluated this idea to see whether it deemed these claims to be suitable for class-action litigation. After evaluating Dardas's idea, the Fleming Firm chose to pursue the diminished-value class-action litigation with Dardas. To this end, Dardas, Ogletree, and Fleming signed the February 1998 contract governing how they would proceed. Because the Fleming Firm decided to pursue this litigation, the two-year restriction in the December 1997 contract was never triggered. Under the unambiguous language of the December 1997 contract, this contract protected Dardas if the Fleming Firm decided not to pursue any diminished-value class-action litigation with Dardas. This contract, however, does not speak to how Dardas and the Fleming Firm would go forward if they decided to pursue such litigation together. This topic was left to future negotiation and agreement. Because the December 1997 contract does not govern the subject matter of this lawsuit and provides no basis for the relief sought by Dardas and Ogletree in their petition, the trial court correctly granted the Fleming Firm's motion for summary judgment as to their claims based on this contract.[4]

**E. Did the trial court err in dismissing the claims based on the January 1998 and March 1999 contracts and based on alleged oral contracts?**

On appeal, Dardas and Ogletree rely primarily on the December 1997 and February 1998 contracts in support of their arguments. In their petition, however, they also assert claims based on the January 1998 contract, the March 1999 contract, and alleged oral contracts. Dardas and Ogletree sought a declaratory judgment that the January 1998 and March 1999 contracts, among others, cover all diminished-value class-action cases filed by the Fleming Firm. Nonetheless, both in their petition and on appeal, Dardas and Ogletree admit that the February 1998 contract superseded the January 1998 contract. As to the March 1999 contract, it is undisputed that the parties to this agreement were Dardas, the Fleming Firm, and The Sprain Law Firm and that Ogletree was not a party to it. Dardas and Ogletree state in their appellate brief that the purpose of the March 1999 contract was to enable Sprain's new law firm to refer cases. The uncontroverted summary-judgment evidence shows that Dardas and The Sprain Law Firm never referred any clients to the Fleming Firm under the terms of the March 1999 contract.

In its motion for summary judgment, the Fleming Firm argued that (1) the January 1998 contract does not apply because it was superseded by the February 1998

4. In its motion for summary judgment, the Fleming Firm asserted that, to the extent the court determines that the contract between the parties includes a covenant not to compete that precludes the Fleming Firm from pursuing diminished-value cases with any other lawyer, then (a) the covenant-not-to-compete portion of the contract is unenforceable because it does not satisfy the require-ments of Texas law; and (b) the covenant not to compete is contrary to Texas ethical rules and void as against public policy, including the public policy behind Texas Disciplinary Rule of Professional Conduct 5.06. Neither the trial court nor this court have determined that the contract between the parties includes such a covenant not to compete. Therefore, this issue is not before us.

contract, (2) the March 1999 contract does not support the declaratory relief sought by Dardas and Ogletree, and (3) Ogletree has no rights under the March 1999 contract because he is not a party to it. The Fleming Firm also asserted that any claim based on alleged oral contracts fails as a matter of law. On appeal, Dardas and Ogletree have not argued that the trial court erred in dismissing their claims relating to the January 1998 contract, the March 1999 contract, and the alleged oral contracts. Even if they had so argued, we would find no merit in these arguments. The trial court correctly granted summary judgment in this regard. Accordingly, we affirm the trial court's judgment as to the January 1998 contract, the March 1999 contract, and any alleged oral contracts.[5]

**F. Did the trial court err in ruling there is no evidence raising a genuine issue of material fact as to the fraud and fraud-in-the-inducement claims?**

▮▮▮ As to their fraud and fraud-in-the-inducement claims, Dardas and Ogletree argue on appeal that, if this court determines that the February 1998 contract covers fewer than all of the diminished-value class-action cases in which the Fleming Firm was involved, then there is a genuine issue of material fact as to the essential elements of their fraud and fraud-in-the-inducement claims. This court has not determined that the February 1998 contract covers fewer than all of the diminished-value class-action cases in which the Fleming Firm was involved; rather, this court has determined that the February 1998 contract is ambiguous as to this issue. Therefore, the condition in the conditional argument of Dardas and Ogletree as to the fraud and fraud-in-the-inducement claims has not occurred, and so there is no appellate argument as to these claims before this court. Accordingly, we affirm the trial court's summary judgment as to the fraud and fraud-in-the-inducement claims.[6]

**G. Did the trial court err in ruling that the Fleming Firm did not owe a fiduciary duty or duty of good faith and fair dealing to Dardas or Ogletree?**

▮▮▮ Appearing to conflate fiduciary duty and the duty of good faith and fair

5. Although not argued in their opening brief, in their reply brief, Dardas and Ogletree assert that the Fleming Firm was not entitled to summary judgment as to the March 1999 contract to the extent that the Fleming Firm asserts the March 1999 contract superseded the February 1998 or January 1998 contracts. Even if their reply-brief argument were timely, it would have no merit because the Fleming Firm never sought summary judgment based on any such argument.

6. In any event, even if the conditional argument of Dardas and Ogletree were before this court, we still would conclude that there is no genuine issue of material fact as to these claims. In this conditional argument, Dardas and Ogletree assert that, if the February 1998 contract does not apply to all of the disputed cases, then the summary-judgment evidence raises a genuine issue of material fact as to whether the Fleming Firm fraudulently mis-represented to them that the February 1998 agreement covered all diminished-value class actions in which the Fleming Firm was to be involved. In his deposition, Michael Sprain stated Debra Hayes made an oral representation that, although the contracts stated that Ogletree and Dardas (January 1998 contract) or Ogletree (February 1998 contract) had the responsibility for obtaining clients for each case, attorney's fees were "truly for the production of the idea." Even presuming that the Fleming Firm made such a representation, it is not reasonable to infer from this remark that the Fleming Firm was representing that this contract applied to all diminished-value class actions in which the Fleming Firm was to be involved. Furthermore, Sprain and Dardas both testified that Hayes represented that the reason the January 1998 contract was changed in February 1998, was to address concerns about potential ethical problems with the January 1998 contract.

dealing, Dardas and Ogletree asserted claims based on the alleged breach of both of these duties. The trial court granted summary judgment based on the nonexistence of these duties as a matter of law. Dardas and Ogletree do not allege that these duties arose out of a formal relationship; rather, they assert that the duties arose out of an informal relationship based on an alleged imbalance of power and their purported trust in the Fleming Firm. An informal relationship may give rise to a fiduciary duty when one person trusts in and relies on another, whether the relationship is a moral, social, domestic, or purely personal one. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). However, not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *See id.* at 176–77. Texas courts do not create such a duty lightly. *See id.* To impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *See id.* In this case, there is no evidence that a prior fiduciary relationship had arisen between or among Dardas and Ogletree and the Fleming Firm. Accordingly, as a matter of law, the Fleming Firm did not owe Dardas and Ogletree a fiduciary duty. *See id.*

 Although Dardas and Ogletree also argue that the Fleming Firm owed them a duty of good faith and fair dealing, they cite no case that supports this argument. Under Texas law, there is no general duty of good faith and fair dealing in ordinary, arms-length commercial transac-

tions. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 52 (Tex.1998). The summary-judgment evidence does not provide a factual basis for imposing a duty of good faith and fair dealing on the Fleming Firm in this case; rather, the evidence shows that this case involves an ordinary, arms-length transaction.

Accordingly, the trial court did not err in granting summary judgment as to the claims for breach of an alleged fiduciary duty and breach of an alleged duty of good faith and fair dealing. *See Formosa Plastics Corp. USA,* 960 S.W.2d at 52; *Schlumberger Tech. Corp.,* 959 S.W.2d at 176.

## H. Did the trial court err in dismissing the quantum-meruit and promissory-estoppel claims?

 Dardas and Ogletree assert that, if the Fleming Firm's construction of the February 1998 contract is correct, then they are entitled to maintain a quantum-meruit action based on their uncompensated services that the Fleming Firm accepted, because these services were not covered by the February 1998 contract. However, the rule is that when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract or unjust enrichment theory. *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000). The rationale behind this rule is that parties should be bound by their express agreements and that recovery under an equitable theory is generally inconsis-

Presuming the truth of this testimony, it is not material to the alleged representation by the Fleming Firm regarding the scope of the February 1998 contract, because the Fleming Firm's arguments as to the scope of its contract with Dardas and Ogletree are not enhanced by the changes that were effected by

the February 1998 contract. Under the applicable standard of review, the summary-judgment evidence does not raise a genuine issue of material fact as to whether the Fleming Firm induced Dardas and Ogletree to sign the February 1998 contract by making a false representation of material fact.

tent with the express agreement when a valid agreement already addresses the matter. *See id.* Because the February 1998 contract covers the subject matter of the dispute between the parties in this case, Dardas and Ogletree cannot recover, as a matter of law, for quantum meruit. *See id.*

Similarly, as to the promissory-estoppel claim, because an express contract covers the subject matter of this dispute, there is no need to avoid injustice by enforcing an alleged promise by the Fleming Firm. *See Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 226 (Tex.2002) (stating that "promissory-estoppel doctrine presumes no contract exists"); *Doctors Hosp.1997, L.P. v. Sambuca Houston, L.P.,* 154 S.W.3d 634, 636 (Tex. App.-Houston [14th Dist.] 2004, pet. abated) (stating that, "[f]or many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract"). Accordingly, the trial court did not err in dismissing the quantum-meruit and promissory-estoppel claims.

### IV. CONCLUSION

The February 1998 contract is ambiguous as to whether it covers diminished-value class-action cases in which Dardas and Ogletree did not refer the clients or perform services. Therefore, the trial court erred in granting summary judgment as to the breach-of-contract claim for the February 1998 contract and as to the

first item of requested declaratory relief, to the extent it is based on the February 1998 contract. As to all other claims, the trial court did not err in granting summary judgment.[7] Accordingly, we reverse, sever, and remand for further proceedings consistent with this opinion the trial court's judgment as to the breach-of-contract claim for the February 1998 contract and as to the first item of requested declaratory relief, to the extent it is based on the February 1998 contract. We affirm the remainder of the trial court's judgment. We do not address whether the 2005 amendment to former Rule 1.04 applies or whether it manifests public policy as to the February 1998 contract.

Based on our holdings, we find good cause to apportion the total costs of appeal equally as between Dardas and Ogletree on the one hand and the Fleming Firm on the other. *See* TEX.R.APP. P. 43.4. Therefore, for good cause and in the interest of justice, we order Dardas and Ogletree on one side and the Fleming Firm on the other to each pay one-half of the aggregate appellate costs incurred in this case.

DRAUGHN, J., dissenting.

JOE L. DRAUGHN, Senior Justice, dissenting.

Upon careful consideration, I conclude that the February 1998 contract unambiguously applies only to cases in which the clients were referred by Dardas or Ogle-

7. Dardas and Ogletree ask this court to reverse and render judgment granting their motion for partial summary judgment. The Fleming Firm asserts this court lacks jurisdiction over this motion. *See CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998) (stating that, before a court of appeals may review an order denying a cross-motion for summary judgment not covered by an interlocutory appeal statute, both parties must have sought final judgment in their cross-motions for summary judgment, unless an exception applies involving declaratory relief). Although Dardas and Ogletree assert that the declaratory-relief exception allows review of their motion for partial summary judgment, we need not reach this issue because, even assuming we have jurisdiction over this motion, it would not affect our judgment in this case. We cannot render a judgment granting summary judgment as to an ambiguous contract.

tree or in which Dardas and Ogletree performed work. Therefore, the trial court correctly granted summary judgment as to all claims. I would grant rehearing and affirm the trial court's judgment. Accordingly, I respectfully dissent.